28942. POWELL *et al.,* receivers, *v.* JARRELL.

Decided June 19, 1941.   Rehearing denied July 24, 1941.

E. S. Aull, Harllee Branch Jr., MacDougald, Troutman & Arkwright, Henry A. Stewart, for plaintiffs in error.

Arnold, Gambrell & Arnold, J. B. Edwards, contra.

SUTTON, J.   Mrs. Willie Mae Jarrell brought suit against L. R. Powell Jr. and Henry W. Anderson, receivers of the Seaboard Air Line Railway, to recover $45,000 damages because of injuries alleged to have been sustained as the result of a collision of a westbound passenger train of the defendant with a certain truck in which the plaintiff was riding at the time and which was being driven by one J. J. Quick, the collision occurring about 5:30 in the afternoon of February 17, 1939.   It was alleged that the car was proceeding in a northerly direction along the right-hand side of Broad Street in Cedartown, Georgia, in the direction of and approaching the Broad Street crossing of the railway; that at said crossing there are five tracks, the main line and four sidetracks, two of the sidetracks being north of the main line and two being south thereof; that between the first and second sidetracks, as the truck approached and to the right of the truck, were several buildings, one extending to a point within a few feet of the street and within a few feet of the sidetrack south of the main line; that east of the crossing on the main line there was an embankment on each side of the railroad, ranging from five to twenty feet in height, and that at a point about three hundred feet east the railroad track curved sharply to the north; that as the truck was approaching and after it had crossed the first and second sidetracks, and when it had got on the main line, traveling at a speed of about five to ten

miles an hour, the truck was violently struck on its right side by a west bound passenger train traveling on the main line, and that the plaintiff was violently knocked from the truck and dragged by the locomotive for a distance of approximately one hundred feet and seriously, painfully, and permanently injured as subsequently set out in the petition; that the street approached the crossing over the main line at an up-grade, the top of the track of the crossing at the main line being about seven or eight feet above the level of the street twenty or thirty feet south of the main line; that a lumber building at the southeastern side of the intersection is within about three feet of Broad Street and within about five feet of the sidetrack next to the main track, and within approximately fifteen feet of the main track, and that the view of one approaching from the direction in which the plaintiff was coming was obstructed by said building and other buildings and stacks of lumber in that area, by a fence and gate south of the main line and east of the crossing, and by high embankments and by the curvature of the said sidetrack; that there were also a signboard and a large telephone pole at the southeast side of said intersection which obstructed the view. The petition set forth the injuries which the plaintiff alleged she received, their permanency, her pain and suffering, loss of earning capacity and ability to work and to attend to her household duties, she alleging that she was a married woman at the time of sustaining her injuries, but living separate and apart from her husband, and had been for a considerable length of time, and was supporting herself and her four minor children by her work around her home and from the proceeds from her work as a seamstress in a Government sewing room in Cedartown.

She alleged that the defendants were negligent in the following particulars, all of which acts contributed to and proximately caused the injuries which she sustained: (a) No signal of the approach of the said train to the crossing was given by whistle, bell, or otherwise, as should have been done by the engineer and fireman in charge of the train in the exercise of ordinary care; (b) the engineer and fireman in charge of said train failed to ring the bell of the locomotive in approaching the crossing as required by law, and said failure constituted negligence as a matter of law; (c) that said train, as it approached the crossing and at the time of the collision, was traveling at a speed of approximately 35 or 40 miles per

hour, in violation of the requirement of ordinary care; (d) the engineer and fireman in charge of said train failed to keep a constant and vigilant lookout ahead as they approached the crossing, as required by law to do and as required to do in the exercise of ordinary care; (e) that the said crossing being in a thickly settled residential and industrial section of the town of Cedartown, the defendants were negligent in not maintaining a watchman or some signal device at the crossing to warn persons of the approach of trains over the crossing; (f) the engineer and fireman in charge of said train, knowing of the absence of a watchman or signal device at the crossing, did not stop or slow down the train sufficiently to have one of the train crew go in advance and flag the crossing before the train moved over it, and were negligent in that a member of the crew did not flag the crossing under the circumstances before the train passed over it.

The defendants filed an answer, denying all of the allegations of negligence and that any act of the agents or employees of the defendants contributed to and proximately caused any of the injuries which the plaintiff sustained. The case came on for trial, and the jury returned a verdict in favor of the plaintiff in the sum of $11,000. The defendants filed a motion for new trial on the general grounds, and by amendment added several special grounds, and the exception here is to the judgment of the court overruling the motion.

■ It is contended in the first special ground of the motion for new trial that the court erred in charging the jury, in that, while undertaking to instruct the jury with reference to the rule for determining the weight or preponderance of the evidence as laid down in the Code, § 38-107, the court omitted to state that they might consider "the interest or want of interest of the witnesses and also the personal credibility so far as same may legitimately appear from the trial." These considerations are mentioned in the Code section in question. While it is not error, in the absence of a special request to charge, to fail to charge the provisions of the Code, § 38-107, in reference to the rules for determining the weight or preponderance of the evidence, it has been held repeatedly that where the court undertakes to charge this Code section it is reversible error if the court fails to instruct the jury fully and completely with respect thereto and merely charges certain

portions of the section, where the omitted portion is applicable under the facts. *Hinson* v. *Hooks,* 27 *Ga. App.* 430 (108 S. E. 822) ; *Gossett & Sons* v. *Wilder,* 46 *Ga. App.* 651 (5) (168 S. E. 903) ; *Shankle* v. *Crowder,* 174 *Ga.* 399, 411 (162 S. E. 180) ; *Tucker* v. *Talmadge,* 186 *Ga.* 798, 800 (6) (198 S. E. 726) ; *Garner* v. *Wood,* 188 *Ga.* 463, 465 (4 S. E. 2d, 137). As urged by the plaintiff in error, the omitted portion as to "the interest or want of interest of the witnesses" was particularly relevant and its omission harmful to the defendants because of the fact that the only witnesses who testified for the plaintiff as to the manner in which the collision occurred were the plaintiff herself, the driver of the truck in which the plaintiff was riding when run into by the defendants' train and who had a suit pending against the defendants because of the same collision, and another witness whose personal credibility was directly attacked on the basis of admissions made by him on cross-examination as to previous contradictory statements made by him. The failure of the court to charge, under the circumstances, that the jury might, in determining the weight or preponderance of the evidence, also take into consideration the interest or want of interest of the witnesses constitutes reversible error, inasmuch as the testimony of the witnesses for the plaintiff as above mentioned related to a controlling issue in the case.

As further contended by the plaintiffs in error, the omitted portion as to the personal credibility of the witnesses in so far as the same may legitimately appear from the trial of the case was particularly relevant. It appears, however, that, while the court did not, in charging the particular Code section, instruct the jury with reference to this consideration, it did, after charging as to the manner of determining the preponderance of the evidence and as to the relative value of positive and negative testimony, state, in connection with instructions as to impeachment of a witness, that the final credit to be given the testimony was a matter to be determined by the jury "in the exercise of your right to pass on the credibility of the witness." For this reason we think that the jury was sufficiently informed as to their right to take into consideration the personal credibility of the witnesses in so far as the same may legitimately appear from the trial of the case, and the ground of the motion is without merit in this respect.

■ The court charged the jury as follows: "I charge you, gen-

tlemen of the jury, that a witness may be impeached by proof of contradictory statements previously made by him as to matters relevant to his testimony and to the case, but the final credit to be given the testimony of a witness whether impeached in that manner or by any other method, is a matter to be determined by you gentlemen in the exercise of your right to pass on the credibility of the witnesses; and the testimony in contradiction to Mr. Quick was admitted for your consideration solely as a matter of contradiction of some previous statement made by him in a matter material to the case, and not with reference to determining the issue in this particular case." Error is assigned on the grounds, (a) that the court failed to charge that where a witness has been successfully contradicted as to a material matter his credibility as to other matters is for the jury to determine, but that if they believe that a witness has knowingly and wilfully sworn falsely about a material matter all of his testimony should be rejected unless corroborated by circumstances or other unimpeached evidence; (b) that the latter portion of the charge, "and the testimony in contradiction to Mr. Quick" etc., tended to minimize the value of the testimony offered by the defendants as to the contradictory statements made by the plaintiff's witness, Mr. Quick, the driver of the car, soon after the collision and at the scene of the collision, the testimony of the defendants' witness, J. F. Hill, as to such contradictory statements of Quick being: "The statement I heard Mr. Quick make was that he saw the train when he was almost to the crossing, but he figured he had time to beat it across the crossing, but he did not;" (c) that such latter portion of the charge was confusing and misleading to the jury for the reason that the court referred to the testimony in contradiction of Mr. Quick as being admitted for the jury *solely as a matter of contradiction of some previous statement* made by him in a matter material to the case, leaving the jury uncertain as to what evidence was referred to; (d) that the effect of such charge was to create the impression and lead the jury to believe that the witness mentioned, Mr. Quick, was the only witness sought to be impeached by contradictory statements and that the only evidence offered as to contradictory statements was as to statements made by the witness Quick, when as a matter of fact evidence as to contradictory statements of another witness for the plaintiff, M. H. Easterwood, was offered in behalf

of the defendants in the cross-examination of said witness, he having admitted that he had previously made statements contradictory to some of the testimony given by him on the stand and that the previous contradictory statements made by him were true; that the effect of the charge was to exclude from the consideration of the jury such previous statements of Easterwood and to thus deprive the defendants of the benefit of the admissions made by him on cross-examination as to such previous contradictory statements made by him; (e) that the court should also have charged that a witness may be impeached by disproving the facts testified to by him.

"It is well settled that while it is not incumbent upon the judge, in the absence of a timely and appropriate written request, to charge upon the subject of the impeachment of witnesses, yet where that subject is referred to in the charge, all of it that is material and applicable to the facts of the case should be given." *Williams* v. *State,* 25 *Ga. App.* 193 (102 S. E. 846). In objection (a) the plaintiffs in error contend that the court failed to charge that where a witness has been successfully contradicted as to a matter his credibility as to other matters is for the jury to determine. The record shows that the court charged the jury in the quoted excerpt that the final credit to be given the testimony of a witness when impeached by any method is for the jury. It was not shown that the witness Quick had knowingly and wilfully sworn falsely as to the manner of the collision and whether or not he saw the approaching train, and in the absence of a special written request it was not error for the court to fail to charge that if the jury believed the witness had so sworn about a material matter all of his testimony should be rejected unless corroborated by circumstances or other unimpeached testimony. As to objection (b), no error appears in that portion of the excerpt "and the testimony in contradiction to Mr. Quick was admitted for your consideration solely as a matter of contradiction of some previous statement made by him in a matter material to the case, and not with reference to determining the issue in this particular case." The plaintiff's witness Quick, the driver of the truck, testified that he did not see the train before it was upon the truck at the crossing. The defendants later put up a witness who testified that he went to the scene soon after the collision, and that Quick then and there told

him that he saw the train when he was almost to the crossing but thought he had time to beat it across but did not. The court correctly charged that this testimony of the defendants' witness was not admitted for the purpose of determining the issue in the case, but solely as a matter of contradiction of Quick's testimony on the stand. It is difficult to see wherein, as claimed by the defendants, this language tended to minimize the value of the testimony of their witness, as it was admissible only for the purpose of consideration by the jury as against the plaintiff's witness Quick's testimony. Neither was it confusing and misleading as stated in objection (c), inasmuch as it could not reasonably be said that the jury understood the testimony of the defendants' witness to relate to anything except the testimony of the witness Quick on the trial of the case. The objection (d) is also without merit. The court was dealing only with the testimony of Quick as affected, in the opinion of the jury, by the testimony of the defendants' witness, and what was said could not reasonably be construed as having the effect of excluding from the jury's consideration the alleged admission of another witness for the plaintiff, M. H. Easterwood, that he had previously made statements which were true and also contradictory to some of his statements on the stand. If the defendants desired the court to instruct the jury as to such alleged conflicting statements, a written request therefor should have been made, and in the absence of such a request the excerpt is not subject to the objection urged. As to objection (e) it was not error, under the evidence, for the court to fail to charge, in connection with the quoted excerpt, that a witness may be impeached by disproving the facts testified to by him.

The charge of the court that "The defendants owed the plaintiff ordinary care to protect her from hurt and injury by any of the acts of the defendants, and the plaintiff likewise owed the defendants ordinary care to avoid placing herself in a position which would result in injury inflicted by them" was not error for the assigned reason that it placed upon the defendants the burden of exercising such care as *would prevent* injury to the plaintiff, but correctly instructed the jury that the defendants owed the plaintiff the duty of ordinary care and diligence to protect the plaintiff against injury in the operation of the train over the public crossing. The defendants were not obliged to absolutely *pre-*

*vent* injury to the plaintiff, but were under a duty to make an effort to keep her from being injured, and that effort required the exercise of ordinary care and diligence. The court did not indicate to the jury that the effort must be successful, and correctly stated the law.

■ The fourth special ground complains that the court, in instructing the jury that it was their duty to reconcile, if possible, any conflict in the evidence so as to make the witnesses speak the truth, and if there was any evidence which could not be reconciled they should believe the evidence of "the witness or those witnesses" which seemed the most reasonable and most credible, excluded the documentary evidence from the jury's consideration. No documentary evidence was introduced except plats, pictures, and mortality tables, about which there was no conflict, and, consequently, in reconciling any conflict the jury was left only to a consideration of such conflict as appeared in the testimony of witnesses or as between testimony and documentary evidence. The jury was left free to consider, in that connection, both testimony and documentary evidence, and the court charged the jury in the last phrase of the excerpt objected to that the jury should settle the issue by the greater weight or preponderance of the *evidence,* which, of course, includes documentary evidence.

■ In the fifth special ground it is contended that the court, in charging the jury, "They [the defendants] were required, however, to sound the bell as they passed the crossing approaching the scene of the accident" in effect instructed the jury that the defendants were required to ring the bell not merely in approaching the crossing at which the collision occurred, but in approaching a crossing which was reached ahead of the crossing at which the collision took place and which was about 625 feet distant, it being contended that a failure to ring the bell at such other crossing was not assigned by the plaintiff as contributing to the collision. The issue as to the ringing of the bell was, it is true, whether or not it was rung on approaching the crossing where the collision occurred, and the jury, as intelligent men, could hardly have understood the charge of the court, though somewhat inexactly stated, to have had any reference to another crossing. It would appear from the language used that the court inadvertently used the words "as they passed the crossing" and then substituted the words "approaching the

scene of the accident," meaning that the defendants were required to sound the bell on approaching the scene of the accident. This is made manifest by the fact that in the sentence immediately preceding the one objected to the court stated: "I charge you, gentlemen of the jury, that in the town of Cedartown, where the accident occurred, the defendants are not required by law and were not required by law to blow their whistle as they approached the scene of the accident." This ground is without merit.

The court charged the jury: "It was their [the defendants'] duty to have some member of the crew keep a lookout down the track in front as a matter of ordinary care." Special ground six of the motion for new trial complains that this charge placed upon the defendants a duty not required by law, and that it was also an expression of opinion as to what constituted ordinary care under the circumstances of the case. We think that the objection that the charge was an expression of opinion is well taken, and that it is incorrect as to the duty of the defendants in all events with respect to approaching a public crossing within a municipality. The law does not require in all events that *some* member of the crew keep a sharp lookout ahead in the exercise of ordinary care. The duty of keeping a lookout ahead is placed specifically upon the *engineer* under Code, § 94-506, which provides in part: "and while approaching said crossing, he shall keep and maintain a constant and vigilant lookout along the track ahead of said engine," etc. Code, § 94-507 provides: "Within the corporate limits of cities, towns and villages the said railroad company shall not be required either to erect the blow-post hereinbefore provided for [Code, § 94-506] or to blow the whistle of its locomotives in approaching the crossing or public roads in said corporate limits, but in lieu thereof the engineer of each locomotive shall be required to signal the approach of his train to such crossing in said corporate limits by constantly tolling the bell of said locomotive, and on failure to do so the penalties of section 94-9903 shall apply to such offense. Provided further, that nothing in this section contained shall be held to relieve the said engineer or the said railroad company of his or its duty of keeping and maintaining a constant and vigilant lookout along the track ahead of its engine while moving within the corporate limits of said city, town or village, or to excuse such railroad company or such engineer from exercising due

care in so controlling the movements of such trains as to avoid doing injury to persons or property which may be on such crossing within said city or within 50 feet of said crossing on the line of such railway, or for failure to observe any ordinance of such city, town, or village, which may lawfully be passed, regulating the speed at which railroad trains may be run therein." Of course, "The requirement in the Code, § 94-507, of certain duties of a railway company within the limits of a municipality, does not relieve it from doing what ordinary care otherwise requires to be done. In fact it is expressly provided in the Code, § 94-508, that 'The enumeration of certain specific duties as in this law expressed shall in no wise be so construed as to relieve any railroad company from any duty or liability which may be imposed upon it by existing laws.' . . 'While specific duties are frequently imposed by statute upon railroad companies with regard to the care which must be exercised at public crossings, they are, even in the absence of specific statutory requirements, bound to exercise reasonable and ordinary care, dependent upon the situation and surroundings of the crossing and the extent of user and commensurate with the danger involved.'" *Pollard* v. *Savage*, 55 *Ga. App.* 470, 474 (190 S. E. 423). But what, if anything, should be done in the exercise of ordinary care in a given situation is a matter for determination by the jury and not for the court, and, hence, the court would not be authorized to instruct the jury, as a matter of law, that *some member* of the crew, instead of the engineer, should "keep a lookout down the track in front as a matter of ordinary care." The engineer is obliged to keep a sharp and constant lookout ahead, as provided in the Code section, supra, but whether or not some other member should, under the particular circumstances of the case, and in the exercise of ordinary care, keep and maintain such lookout is a matter for the jury's determination. Accordingly, we think that the charge as given was not only an expression of opinion as to what constituted ordinary care, but placed upon the defendants a burden not necessarily required of them in all events.

■ Special ground 7 complains that the court erred in connection with reading three charges requested by the defendants, in prefacing the reading of such charges by stating to the jury that they were given at the request of the defendants, it being contended that the court should have plainly informed the jury that the

charges were correct propositions of law and not merely something that the defendants desired to have stated to the jury. The first charge objected to was prefaced by the statement "I charge you this, gentlemen, at the request of the defendants." The second charge began "Another request for charge by the defendants." The third charge began "I charge you this at the request of the defendants." It is error, as shown by certain cases cited by the plaintiffs in error, for the court merely to inform the jury that it is requested by one of the parties to give a charge, and does not make it clear that what is stated to the jury is an instruction by the court itself as to the law. In the present instance, however, the court stated in two of the objected portions "I charge you." While these two excerpts are inapt in that the court should not have stated that the portions charged were requested to be charged by either of the parties, they do not constitute reversible error inasmuch as it is shown that the court gave the instructions as statements of law by the court. In the intermediate charge the court stated "Another request for charge," etc. This was improper. But as the case is being reversed for other reasons, the error here complained of will probably not occur again on another trial of the case.

■ The court charged the jury as follows: "Now as to other acts of negligence, gentlemen, alleged by the plaintiff, it is left to you to determine whether or not they were acts of negligence in the exercise of ordinary care. You will consider the location of the scene of the accident, the condition of population, the traffic, and other things, that may have come to your attention. You will ascertain what would be ordinary care at that particular point on the part of the defendants in the case, and if you find that ordinary care required something of the defendants that they did not do on that occasion, that they did not exercise and perform, then it would be an act of negligence, and if that act of negligence you should find to be the proximate cause of the injury, the plaintiff would be entitled to recover unless she was otherwise barred by some other rule of law. Failure to blow the whistle or to have a watchman or a signal device or somebody going in front of the train—you will determine whether or not failure to do those things in this case was the exercise of ordinary care or a failure to exercise ordinary care." The charge is not subject to the objection urged that it authorized the jury to take into consideration any

personal knowledge or information that might have come to the attention of the jury, regardless of the source from which it was derived. The court began by stating "Now as to other acts of negligence, gentlemen, alleged by the plaintiff," and it could not reasonably be said that the jury did not understand that they should confine their investigation and consideration to such facts as were made to appear by the evidence. Neither did such charge instruct the jury that if they found that the defendants had failed to exercise ordinary care in some manner not charged by the plaintiff they would be guilty of such negligence as would entitle the plaintiff to recover in the present case. Nor was the charge "Failure to blow the whistle or to have a watchman or a signal device or somebody going in front of the train—you will determine whether or not failure to do those things in this case was the exercise of ordinary care or a failure to exercise ordinary care" error for the assigned reason that it authorized the jury to consider as an act of negligence the mere fact that somebody did not go in front of the train and to base a recovery thereon. Circumstances may require of a railroad the doing of something at a dangerous crossing in a city besides the ringing of a bell, and under the allegations of negligence in the petition and the evidence, the admittedly dangerous nature of the crossing etc., the charge objected to was not error. Grounds 8-A, 8-B, and 8-C are merely repetitions of objections mentioned above, and are controlled adversely to the plaintiffs in error by the rulings thereon.

■ The court charged the jury: "As to her injuries, you would consider what sort of injuries she received, their character as to producing pain, the intensity thereof, whether it has ceased or continues up to this date, and whether it may continue in the future; whether she received a severe shock to her nervous system and, if so, to what extent; whether she received cuts and bruises; consider all those things, whether she has suffered constantly since and is still physically very weak; whether her nervous system has been impaired, and whether or not it was affected by the injuries she is alleged to have received. Consider her health in every particular, her eyesight, and whether or not she suffers pain constantly as a result of these injuries, the length of time that is required to effect a recovery of her condition, and whether all the injuries have healed, or whether they are permanent, and then you would give

plaintiff, if she otherwise is entitled to recover, just such sum as you think would be fair compensation for the pain and suffering, the disfigurement in her appearance, and the impairment in her bodily health and vigor, and also loss of earning capacity." This charge was not error for the assigned reasons that it unduly emphasized the plaintiff's contentions, or authorized the recovery of double damages for loss or impairment of earning capacity, or improperly instructed the jury as to determining the amount to be awarded for loss of earning capacity.

■ Ground 10 complains that the court erred in expressing an opinion that special damages had been disclosed in the case, for which the plaintiff was entitled to compensation, in that it charged: "Damages are given as compensation for injuries done, and they are special damages necessarily disclosed from the acts here complained of and are susceptible of being reduced to a money value or amount." Taken in connection with what followed in the charge, we do not think the excerpt subject to the objection made. A proper interpretation of the language is that the court was instructing the jury that the damages which are given as compensation for injuries are such as are necessarily disclosed or must be disclosed from "the acts here complained of" and must be "susceptible of being reduced to a money value or amount." The court shows what it means as it refers to items of damages alleged in the petition and limits the jury to a consideration of such items and instructs the jury that "you may consider all these items, and if she is otherwise authorized to recover, or entitled to recover, these would be legitimate items of damage to be considered in making your award."

■ The court charged the jury: "Find out her expectancy as you have with you a book, and you will look at the age of the plaintiff at the time of the accident, and look to the figures to the right of that to see how long she may live. You can find that out. You can find out how long she would have expected to live at the time of the accident to her, and then calculate the amount that you will award to her, if you find she is entitled to recover at all, according to her expectancy of life." In the eleventh special ground of the motion for new trial it is complained that the charge was error for the reasons, among others, that there was an issue on the trial of the case as to whether the plaintiff's injuries were permanent or

temporary, and that the charge amounted to a direction to the jury that if they found that the plaintiff was entitled to recover at all they should calculate the amount to be awarded according to the plaintiff's expectancy of life as indicated by the figures in the book referred to in the charge, and because in said charge the court failed to instruct the jury that the mortality table in the book referred to should not be used by the jury unless they believed that the plaintiff's injuries were permanent. These objections are well taken. In *Seaboard Air-Line Railway* v. *Brewton,* 150 *Ga.* 37 (2) (102 S. E. 439), it was held: "In an action for damages based on personal injuries, where under the pleadings and the evidence there was an issue whether the injuries were permanent or temporary in character, and the judge instructed the jury relatively to the measure of damages applicable to a case where the injury was permanent, but omitted to give instruction as to the measure of damages that would be applicable if the injury were not permanent, such omission, even without proper request for charge, would be cause for reversal." In *W. & A. R. Co.* v. *Knight,* 142 *Ga.* 801 (83 S. E. 943), it was ruled: "Where the case upon trial is one for the recovery of damages for personal injuries alleged to be of a permanent character and to have been sustained in consequence of the defendant's negligence, and there is evidence to show that the injuries are of a permanent character and that the plaintiff will suffer a decrease in his earning capacity, which will continue through life, it is proper to give to the jury instructions concerning the use of the annuity table found in 70 *Georgia Reports,* 847. But if the injuries are not of the character described above, that is, if they are not permanent in character and will not cause a permanent decrease in the earning capacity, the table should not be given. And if the evidence upon the question whether or not the plaintiff's injuries are of the character just indicated is conflicting, the court should not instruct the jury touching the use of the table referred to, without also instructing them in that connection, or somewhere in the charge, that the table can only be used in case the injuries are shown to be permanent, and if they do not find the injuries to be permanent they will have no use for the table. In the present case the judge charged the jury in regard to the use of the table, without submitting to them the question as to the permanency of the injuries sustained; and this charge is excepted

to upon the ground, among others, that 'it assumed that the injury alleged to have been inflicted upon the plaintiff was a permanent injury, it being one of the questions in said case as to whether or not said injury was permanent.' In view of the ruling made above, this exception is well taken; and the evidence upon the question of the permanency of the plaintiff's injuries being sharply conflicting, this court can not say that the error was harmless; and a new trial will therefore be granted upon the ground complaining of the charge referred to." See also *Western & Atlantic Railroad* v. *Michael*, 42 *Ga. App.* 603, 611, 612 (157 S. E. 226). The evidence in the present case raised an issue as to whether the plaintiff's injuries were permanent or temporary, and the charge of the court was calculated to cause the jury to understand that if they found that the plaintiff was entitled to recover at all they were concerned only with the amount of damages to be awarded for injuries which were permanent, and, under the authorities above cited, was error.

■ Inasmuch as the judgment is reversed for errors hereinabove dealt with, it is unnecessary to rule on the assignment of error in the twelfth special ground of the motion for new trial as to the alleged excessive amount of the verdict. For the same reason it is unnecessary to pass on the general grounds of the motion for new trial.

*Judgment reversed. Stephens, P. J., concurs in all of the rulings except those in divisions 1 and 11 of the opinion, in which he concurs specially. Felton, J., concurs in the judgment.*