29711. CALLAWAY, trustee, *v.* PICKARD.

DECIDED NOVEMBER 25, 1942. REHEARING DENIED DECEMBER 18, 1942.

*Matthews, Owens & Maddox, Henry Stewart,* for plaintiff in error.  *Arnold, Gambrell & Arnold, J. B. Edwards,* contra.

STEPHENS, P. J.  (After stating the foregoing facts.)

1.  While, in passing on the general demurrer, the petition is to be construed most strongly against the plaintiff, and while, in such a case, if an inference unfavorable to the right of the plaintiff may

be fairly drawn from the facts stated in the petition, such inference will prevail in determining the rights of the plaintiff and the defendant, and while no person can recover damages from a railroad company for injuries to himself where such injuries result from his own negligence, or where by the exercise of the proper care for his own safety he could have avoided the consequences to himself caused by the negligence of the railroad company, it has been held many times by the appellate courts that what amounts to negligence, contributory or comparative negligence, proximate cause, etc., are ordinarily questions for the jury under appropriate instructions, and such questions will not be determined by the court as a matter of law except in plain and undisputed cases. See *Pollard* v. *Heard,* 53 *Ga. App.* 623, 625 (186 S. E. 894) ; *Southern Railway Co.* v. *Slaton,* 41 *Ga. App.* 759 (3) (154 S. E. 718) ; *Central of Georgia Railway Co.* v. *Leonard,* 49 *Ga. App.* 689 (3) (176 S. E. 137). The petition alleged that the injuries were the result of the defendant's negligence, and alleged facts from which the jury might find that the defendant was negligent. It was not incumbent on the plaintiff to allege facts showing that he exercised due care for his own safety, or that his injuries were not the result of his own negligence. The petition showed that the plaintiff approached the crossing, brought his truck almost to a stop, and before entering upon the crossing looked to the north to see if a train was approaching, and, on account of the old depot building and a stack of lumber near the railroad tracks, being unable to see any train approaching, and not hearing a train approaching, he proceeded over the crossing where he was struck by the train, which the plaintiff alleged approached the crossing, which was in a municipality, without blowing the whistle or ringing the bell and at the negligent and reckless speed of thirty or thirty-five miles an hour. He alleged that the crossing was in a thickly-settled residential and industrial section of the municipality and near the center of the municipality; that the traffic over the crossing was heavy; that there were many houses in the vicinity on both sides of the street, and that people constantly crossed over the tracks at this point; that the servants of the defendant in charge of its train knew the above facts, and knew that no crossing watchman was kept at this place, and that under the circumstances, in the exercise of due care for the safety of persons using the crossing, it

was the duty of these servants to have slowed the train, and to have sent a flagman or some other servant ahead of the train to flag the crossing, and thus warn people who might be using the crossing at the time of the approach of the train. In these circumstances the petition as amended was sufficient to withstand the general demurrer, and the court did not err in overruling it.

The plaintiff, in using this crossing, was not negligent as a matter of law because he failed to stop, look, and listen. That doctrine does not prevail in Georgia. *Pollard* v. *Heard,* 53 *Ga. App.* 623, 627 (186 S. E. 894) ; *Bryson* v. *Southern Railway Co.,* 3 *Ga. App.* 407 (59 S. E. 1124). The Supreme Court of the United States in an opinion written by the late Justice Cardoza stated as follows: "In such circumstances the question, we think, was for the jury whether reasonable caution forbade his going forward in reliance on the sense of hearing, unaided by that of sight. No doubt it was his duty to look along the track from his seat, if looking would avail to warn him of his danger. This does not mean, however, that if vision was cut off by obstacles, there was negligence in going on, any more than there would be negligence in trusting to his ears if vision had been cut off by the darkness of the night." Pokora *v.* Wabash Ry. Co., 292 U. S. 98 (54 Sup. Ct. 580, 78 L. ed. 1149, 91 A. L. R. 1049). Furthermore, it appears from the petition that the plaintiff both looked and listened, and heard nothing and saw nothing. He could not see the southbound train because of the obstacles to the north and on his left, which were along the tracks, consisting of the stack of lumber and the old depot building. He was not negligent, as a matter of law, when he did not see or hear a train approaching, in attempting to cross over the tracks.

2. None of the grounds of special demurrer were meritorious. It is insisted that the petition was subject to special demurrer because it did not allege the exact distance of the depot and the stack of lumber from the tracks. The plaintiff alleged that as he "approached said crossing at said time going in an easterly direction, his view to the north was obstructed by an old building known as the Central of Georgia depot, and by stacks of lumber on the property of the Central of Georgia Railway Company, which building and which stacks of lumber were within a few feet of the first track of said company." These facts were not charged in the petition

as negligence, but were stated as explanation why the plaintiff could not see the train, and as descriptive of the locality and environment of the crossing. It was not incumbent on the plaintiff to more minutely set forth these facts. See *Central of Georgia Railway Co.* v. *Hartley*, 25 *Ga. App.* 110, 111 (103 S. E. 259); *Southern Railway Co.* v. *Lunsford*, 50 *Ga. App.* 829, 833 (3) (179 S. E. 571).

The fact that the plaintiff did not allege what part of Gibson Street, the street used by him as he approached the crossing, was being traveled upon by him at the time is immaterial in determining whether the defendant was negligent as charged. Furthermore, it is to be presumed, in the absence of anything to the contrary, that the plaintiff was properly using this street. The petition was not subject to special demurrer because it did not allege how wide Gibson Street was at this crossing. See *Pollard* v. *Roberson*, 57 *Ga. App.* 621, 624 (195 S. E. 897).

The petition was not subject to special demurrer because the plaintiff, in alleging that he brought his truck almost to a stop as he approached the crossing, stated a conclusion without any facts upon which to base it, and because the plaintiff did not state how close to the tracks he was at the time, and did not state what part of the street he was on, or how fast he was driving, both before and after he slowed. If the manner and speed in which the plaintiff approached this crossing contributed to his injury, this was a matter of defense, and the petition was not subject to special demurrer because it did not disclose these facts.

The allegations of the petition as to the failure of the defendant to maintain a watchman or some signal device at the crossing were not subject to special demurrer as being conclusions without sufficient facts set forth in support thereof. The petition set out in detail the facts with reference to the physical surroundings of the crossing. It was alleged that there was a depot and a stack of lumber on the north of the intersection, that there were houses in the vicinity, that it was in a thickly-settled industrial and residential section near the center of the town, and that it was a much traveled crossing. See *Lewis* v. *Powell*, 51 *Ga. App.* 129, 131 (179 S. E. 865); *Central of Georgia Railway Co.* v. *Leonard*, 49 *Ga. App.* 689 (4) (176 S. E. 137); *Georgia Railroad &c. R. Co.* v. *Wallis*, 29 *Ga. App.* 706 (3) (116 S. E. 883). These allegations

were not subject to special demurrer on the ground that it did not appear how a watchman could have been of benefit to the plaintiff, or could have warned him. Under the allegations of the petition, had there been a watchman at this crossing he would undoubtedly have been in a position to see the approaching train, and could have warned the plaintiff as he approached.

The defendant demurred specially to the allegations that the engineer and fireman in charge of the train, knowing of the absence of a watchman or a signal device at this crossing, failed to stop or slow the train sufficiently to have some member of the train crew go in advance and flag the crossing before the train moved over it. The contention of the defendant is that such failure on the part of the engineer and fireman could not be properly charged as negligence because it does not appear that there was a law requiring the flagging of the train at this crossing, and because it did not appear how the flagman, going in advance of the train, would have saved the plaintiff. Conduct on the part of the operators of railroad trains does not have to amount to violation of law before a jury will be authorized to find that such conduct, under the circumstances, amounted to a failure to exercise ordinary care. In *Powell* v. *Jarrell*, 65 *Ga. App.* 453 (16 S. E. 2d, 198), this court held that circumstances may require of a railroad the doing of something at a dangerous crossing in a city besides the ringing of a bell, and that under certain circumstances the jury would be authorized to consider as an act of negligence the fact that some member of the train crew did not go in front of the train as it approached such crossing.

The allegations as to the injuries received by the plaintiff, and that on account thereof he has been partially incapacitated and will be partially incapacitated permanently, were not subject to special demurrers. These allegations were not vague, indefinite, and uncertain, and were not subject to special demurrer on the ground that it was not alleged what the plaintiff has been able to earn since his injuries. In *City of Atlanta* v. *Jolly*, 39 *Ga. App.* 282, 283 (146 S. E. 770), this court stated that "proof of the plaintiff's actual earnings, either before or after the injury, is not essential to the establishment of the value of the plaintiff's decreased earning capacity." Of course we do not mean to hold that where a recovery is sought for a pecuniary loss resulting from an

impaired earning capacity caused by a physical injury there need not appear some data from which the jury can arrive at the pecuniary value of the injured person's earning capacity, both before the injury and afterward. *Rome Railway &c. Co.* v. *Duke*, 26 *Ga. App.* 52 (105 S. E. 386).

3. Error is assigned in ground 2 on the following charge of the court: "The other allegations of negligence, failure to blow the whistle, failure to have a watchman at the crossing, failure of the engineer and fireman in charge of said train to slow it down sufficiently to have some one to go in advance and flag the crossing, and such other allegations of negligence as there are in the petition are alleged as failure to exercise ordinary care. If they are established as negligence to your satisfaction, and it is shown to you that they or either of them were the proximate cause of the plaintiff's injuries, the plaintiff would be entitled to recover damages in this case unless barred by some other rule of law given you in charge." This charge was not error for any of the reasons assigned. The instruction complained of was not contrary to law and was proper under the pleadings and the evidence. Such instruction did not amount to an expression of opinion on the part of the court that sufficient evidence had been introduced for a jury to find that such allegations of negligence amounted to negligence, and that the jury were authorized to render a verdict for the plaintiff in the event they should find that these failures existed. The charge complained of was not error because the court did not in that connection give any rule by which the jury could determine whether or not, in the exercise of ordinary care, the agents of the defendant should have blown the whistle, or had a watchman at the crossing, or should have slowed the train to such a speed as to permit a member of the crew to go in front of the train and flag the crossing. Such charge was not confusing and misleading to the jury and did not lead them to believe that they ought to find for the plaintiff irrespective of whether the circumstances required, in the exercise of ordinary care, that the agents of the defendant should have blown the whistle, or that the defendant should have had a watchman at the crossing, or the agents of the defendant should have slowed the train to such a speed as to permit some one to go in front of the train and flag the crossing.

4. The court did not err, as complained of in ground 3 in

charging the jury as follows: "Damages in a case like this are given as compensation for the injury done, and this is the measure you are to use if there are injuries and if they are of such a character as to be capable of being estimated in money. When the law permits damages to be recovered in a case like this, it seeks to give fair pay or compensation for the injury done. You will bear this in mind and apply it to the charge on the measure of damages involved in this case." This charge was not argumentative, and was not an expression of opinion on the part of the court that damages could be recovered "in a case like this." Such charge did not mislead the jury into believing that the only measure of damages they were to use, if there were injuries and if they were of such a character as to be capable of being estimated in money, was that "damages are given as compensation for the injuries done."

5. The charge complained of in ground 4, in which the judge detailed the plaintiff's injuries and instructed the jury that they were authorized to consider pain and suffering in estimating his damages, that there is no standard by which to measure the extent thereof except the enlightened consciences of impartial jurors, that they should give plaintiff, if he was otherwise entitled to recover, just such sum as they thought would be fair compensation for the pain and suffering, disfigurement in his appearance, impairment in his bodily health and vigor, and his impairment in his earning capacity and loss of his earning capacity, and that, as to impairment of earning capacity, if the jury should find that there had been such impairment from the injuries complained of, the jury would, in arriving at the amount of the damages, consider such impairment and whether it had ceased or whether it was permanent, was not subject to the criticism that such instruction misled and confused the jury, and permitted a double recovery for one item of damage, in that such charge gave to the jury an instruction that while they could consider impairment in earning capacity as a component part of the plaintiff's pain and suffering they could, at the same time, consider the impairment of earning capacity as an independent element of damage. *Powell v. Jarrell*, supra.

6. The court did not err as complained of in ground 5 in charging on the question of the plaintiff's alleged impairment in earning capacity, and with reference to the use of the mortality

tables showing the plaintiff's expectancy in life, should the jury see fit to use such tables, for the reason that there was no evidence to justify the charge on diminished capacity of the plaintiff to labor and earn money in the future, that there was no evidence on the exact percentage of impairment from which the jury could properly determine the pecuniary loss thereof, and that it was error to instruct the jury with reference to the use of the mortality tables on diminished earning capacity when there was no evidence of such diminished earning capacity. The jury were authorized to find that the plaintiff was injured, that his injuries prevented him from performing his work as a meter reader for the City of Cedartown, that his earning capacity had been diminished, and that this was probably permanent. The fact that the City of Cedartown had not discharged the plaintiff, was permitting him to perform certain light duties in connection with the keeping of records, and in accordance with its generous attitude toward faithful employees, such as the plaintiff, who had been with the city some seventeen years, and was continuing to pay him the same salary which he had received as a meter reader before his injury, did not demand a finding that the plaintiff has not suffered a permanent incapacity to earn money in the future as the result of his injuries. The plaintiff was not seeking to recover for lost time, but was seeking to recover for a diminished capacity to labor, or impairment of his ability to labor. It is true that at present he is paid the same salary to perform certain light duties, but there is no legal obligation on the city to continue his employment at all, certainly not at the same salary. As we have seen, proof of the plaintiff's actual earnings before his injury and after his injury is not the only criterion to establish his permanent partial incapacity to labor. The jury were authorized to find that the compensation paid to the plaintiff after his injury by the city and his continued employment by the city were gratuitous acts on its part. *Pollard* v. *Gammon,* 63 *Ga. App.* 852 (12 S. E. 2d, 624). The jury, from the nature of the plaintiff's injuries, as shown by the evidence, were fully authorized to find that the plaintiff, after the injury, was unable to perform the physical acts and manual labor that he had been able to perform before his injury. The jury were authorized to find that this alone might decrease his earning capacity in the

future for the reason that such impairment was permanent. *O'Neill Mfg. Co.* v. *Pruitt,* 110 *Ga.* 577, 579 (36 S. E. 59).

7. It is contended by the defendant in ground 6 that it was error for the court to charge the jury as follows: "Plaintiff has put in evidence certain mortality tables showing the expectancy in life of the plaintiff. You may or may not use these tables, as you see fit. If you decide to use them, the figures put opposite the age of the plaintiff would show his expectancy in life in so far as these tables would show the same. You may arrive at the expectancy of the plaintiff under the facts of the case as shown to you by the evidence. You will have that table out with you and you can look at it. You can use it if you desire, or you may not use it." The defendant has assigned error on the above excerpt as not being sound as an abstract principle of law for the reasons, (1) the jury were thereby instructed that if they saw proper to use the mortality tables they could use them only in a certain way; (2) such instruction failed to inform the jury that the mortality tables were simply an aid to them in ascertaining the expectancy of the plaintiff, to be used by them along with other evidence; (3) such excerpt instructed the jury that the plaintiff's expectancy would be shown by the mortality tables in that "the figures put opposite the age of the plaintiff may show his expectancy in life in so far as these tables would show the same;" (4) the jury were thereby instructed that if the mortality tables were used by them such tables would be binding and conclusive upon them as to the plaintiff's expectancy; (5) the expression in such excerpt that "plaintiff has put in evidence certain mortality tables showing the expectancy in life of the plaintiff" instructed the jury that the tables referred to showed the real expectancy in life of the plaintiff, irrespective of any other evidence or any other instruction given in charge to the jury. The defendant further contended that the excerpt was erroneous and harmful to the defendant because it misled the jury, and left them under the impression that when they decided to use the mortality tables they must treat the number of years put on such tables opposite the age of the plaintiff as his expectancy in life.

There was no error in the above charge for any of the reasons assigned. The excerpt, taken as a whole, did not have the meaning sought to be attributed thereto by the defendant. This ex-

cerpt did not limit the plaintiff's expectancy in life to the number of years represented by the figures on the mortality tables set opposite the figures thereon representing the age of the plaintiff. Neither did it instruct the jury that in ascertaining the plaintiff's expectancy in life the mortality tables were conclusive and binding on the jury. *Central of Georgia Railway Co.* v. *Leonard,* 49 *Ga. App.* 689, 703 (176 S. E. 137).

The charge excepted to in this ground is not like the erroneous charge dealt with in *Western & Atlantic Railroad* v. *Clark,* 117 *Ga.* 548 (44 S. E. 1), in which it was held that the instruction complained of did not instruct the jury that the mortality table was simply an aid for them in determining what had been the expectancy of the deceased. In the charge now under consideration the jury were told "you may or may not use these tables, as you see fit." The jury were also told that the "figures put opposite the age of the plaintiff would show his expectancy in life in so far as these tables would show the same." It therefore appears that the jury were not instructed in the charge now under consideration, as the jury were instructed in the charge dealt with in the *Clark* case, supra, to the effect that "if they use the mortality table, as they have a right to do, the expectancy of the deceased is thirty-three years."

8. It is insisted by the defendant that a new trial should be granted because the court erred, as complained of in ground 7, in admitting in evidence the following rule of the defendant governing the operation of trains in Cedartown, which had been brought into court by the defendant on being served with notice to produce by the plaintiff: "In order to further avoid grade crossing accidents with automobiles in the future, when automobiles are seen approaching a crossing, and there is any doubt as to whether or not the driver will stop, you will sound the cattle alarm signal with the steam whistle as a means of warning the driver of the impending danger." The defendant objected to the introduction of the above rule on the ground that it was immaterial and irrelevant, there being no allegations of negligence in that regard. The defendant contends that the court erred in admitting the rule because it was immaterial and irrelevant to the allegations of negligence in the petition, and because it permitted and led the jury to believe that if the engineer had failed to give the cattle alarm

in approaching this crossing the jury would find for the plaintiff for this reason, even though the plaintiff had not predicated his case on the failure of the engineer to give such cattle alarm, or alleged such failure as a ground of negligence in the petition.

The admission of the rule was not error for any of the reasons assigned. The plaintiff alleged that "no signal was given by bell, whistle or otherwise before said train entered upon the crossing;" and that the defendant "was negligent in that no whistle of said locomotive was blown as it approached said crossing as was required under the circumstances in the exercise of ordinary care." The rule was relevant under the allegations of the petition, and it is inferable that the engineer saw the plaintiff before he was struck. The admission of the rule was not harmful to the defendant. It is a general rule that rules and regulations adopted by a railroad company governing the conduct of its employees in the operation of trains may be admissible in evidence for the purpose of illustrating the negligence of the defendant in a situation to which the rule would be applicable. *Foster* v. *Southern Railway Co.*, 42 *Ga. App.* 830 (6) (157 S. E. 371). In *Pollard* v. *Roberson*, 61 *Ga. App.* 465 (15), 470 (6 S. E. 2d, 203), this court held that a railroad regulation promulgated by the Central of Georgia Railway Company for Cedartown was admissible, although the negligence alleged in the petition was not based on the violation of any rule or regulation of the railroad for the operation of trains over crossings, where the petition alleged that the defendant failed to do the thing required in the railroad bulletin, rule, or regulation, and alleged that this was negligence on the part of the defendant.

The defendant does not assign error on the introduction of the above rule on the ground that it did not appear from the pleadings and the evidence that such rule was applicable; neither does he contend that it appears from the evidence that such rule was not applicable for the reason that it appears that the engineer did not see, at the time he approached the crossing and ran into the plaintiff's truck, either the plaintiff's automobile or other automobiles approaching such crossing.

9. It is contended that the verdict for $17,500 was excessive and out of proportion to the damages shown by the evidence to have been sustained by the plaintiff; the plaintiff having testified that he was making $110 a month as a meter reader for the City

of Cedartown at the time he was injured, that he had not lost any wages or salary as the result of such injuries, and that he was continuing to receive such monthly sum from the city. The defendant also contended that the verdict was so excessive as to show bias and prejudice on the part of the jury. The plaintiff did not seek to recover damages for time lost from his work. He sought to recover for his personal injuries, and for his doctor's bills and medical expenses. The plaintiff claimed, and there was evidence tending to show, that as a result of such injuries the plaintiff suffered and would continue to suffer permanent physical impairment and disability, which would prevent him from performing in the future any work involving physical labor. It is true the evidence showed that the City of Cedartown continued to pay the plaintiff, during the time he was in the hospital and after his injury and up to the time of the trial, the monthly salary he had been receiving before the injury. It appeared from the evidence, however, that the plaintiff was unable as the result of such injuries to perform his work as a meter reader for the city, that he was unable to perform any work the duties of which involved any substantial amount of physical labor and that the city permitted him to do light work such as keeping records. The jury were authorized to find that the plaintiff was a veteran employee of the city, and that he was retained in the employment, doing such light work, largely in recognition of his past faithful service and in sympathy with his present injured condition and physical disability, rather than as employing him as a needed employee and paying him wages as compensation for services performed for and beneficial to such city. The evidence authorized the jury to find that the plaintiff suffered the physical hurts and injuries alleged in his petition, and that such injuries would be permanent. The jury were also authorized to find that the plaintiff had incurred medical expenses and would incur more medical expenses.

In these circumstances it can not be said as a matter of law that the verdict was excessive because there was no evidence of injuries and damages commensurate with the amount of such verdict; neither was such verdict so excessive, under the facts, as to show as a matter of law that it was the result of prejudice and bias on the part of the jury.

10. The evidence for the plaintiff tended substantially to sup-

port the allegations of his petition as amended, which alleged a cause of action. In these circumstances the evidence supported a verdict in favor of the plaintiff for damages resulting from injuries caused by the negligence of the servants of the defendant in charge of the operation of the train which struck the plaintiff at the Gibson Street crossing in Cedartown.

The court did not err in overruling the demurrers and in overruling the motion for new trial.

*Judgment affirmed. Sutton, J., concurs.*

FELTON, J., dissents from the rulings in divisions 5 and 6 of the opinion.