31596. NORTHERN FREIGHT LINES *et al.* v. LEDFORD.

DECIDED JULY 11, 1947. REHEARING DENIED JULY 29, 1947.

*T. J. Long, William P. Whelchel,* for plaintiffs in error.
*Kenyon, Kenyon & Gunter,* contra.

SUTTON, C. J. E. P. Ledford sued Northern Freight Lines, a motor common carrier, and Maryland Casualty Company, its insurer, to recover damages for injuries alleged to have been sustained as the proximate result of the negligence of the carrier.

The jury found for the plaintiff, and the defendants excepted to the overruling of their motion for a new trial. It is conceded that the evidence authorized the finding that the carrier was negligent. The jury was authorized to find that the condition of the plaintiff's spinal column was caused by this negligence of the carrier and that permanent physical disability resulted.

■ In ground 4 of the amended motion, complaint was made that the court, in charging on the subject of the use of the mortality tables, failed to instruct the jury that they should not be used until the jury had first ascertained that the plaintiff's injuries were permanent. In special ground 5, error was assigned on the failure of the court to instruct the jury on the measure of damages in case the jury should find that the plaintiff's injuries were temporary in character and not permanent. Under the evidence there were no injuries due to the negligence of the carrier, or there were permanent injuries due to its negligence. There was no question as to temporary injuries. The court did not err in overruling special grounds 4 and 5.

■ In special ground 6, the plaintiffs in error assign error on the following charge of the court: "He contends in this case that his injuries have caused him to lose his wages; that he is not able to command the wages that he did before this injury complained of and as a result of the injury he has sustained a loss of earning capacity, and I will give you this rule to go by in passing upon that question. With reference to the loss of wages you would have to be guided by the amount he was earning at the time, the length of time he was out of employment as developed by the evidence, and you would be controlled by all those features. You would also, if you find for any future compensations, reduce the amount to its present cash figure at the rate of 7 percent per annum. You should also give credit for diminished earnings, if any, for the natural loss of ability to earn. You may give credit to the defendants for such as would be the natural result by reason of a man growing older, voluntarily abstaining from work, sickness or other similar circumstances—the measure of damages is controlled by proof as to what he lost, if anything." The grounds of error assigned are: (a) that the part of the charge dealing with loss of wages is erroneous for the reason that there was no competent evidence in the case upon which the jury could

base a finding for lost wages, and the charge in this respect was not authorized by the evidence; (b) that the part of the charge dealing with decreased earning capacity was erroneous in that it failed to give the jury the legal measure of damages with respect to future diminished earning capacity, it being contended that the measure of such damages is not controlled by what he lost, if anything, but by his diminished capacity to labor, taking into consideration what he was earning or capable of earning before the accident, the extent of diminution on account of the accident, and multiplying the difference by the number of years the jury might find that the plaintiff would live; (c) that said charge was erroneous for the reason that there was no evidence in the case authorizing a charge on the subject of future earning capacity; (d) because the court erred in charging the jury that they "may" give credit to the defendant for the inability of the plaintiff to labor on account of growing older, voluntarily abstaining from work, etc., instead of telling them that they should give credit, etc.

The plaintiff sued for lost wages, medical and hospital expenses, pain and suffering, and decreased earning capacity, alleging that his injuries were permanent. In dealing with subdivision (a) of special ground 6, reference to the plaintiff's petition will show that he alleged his earning capacity to have been at least $100 per week [at the time he was injured], and that he had lost three-weeks' time from his work on account of said injuries. He testified on the trial that he was earning $100 to $115 per week when he was injured; that he is not able to earn that now and is not able to put in anything like full time; that he never had a foreman before he was injured, but looked after his jobs and did all the work himself, but has had to have a foreman all the time since he was injured; that he was in the hospital in Gainesville for ten days the last time, and in the hospital 3 days in Athens, and was confined at his home a good deal of the time, and he had not been able to be on the job very much for the last four or five weeks before the trial; and that he works by the hour, and not by the day or job. His wife testified as to his losing time, but she could not say how much. Sam Allen, his foreman, testified that he kept a time book and put down the number of hours each man worked and the number of hours Erwin Ledford was on a particular job; and he had not been on any of them in two weeks, that he

has not drawn much pay, has not drawn half time, and the last time he was in the hospital Allen turned in half time on one job for him for that week, and the last week before the trial he only turned in 5 hours a day for 5 days for Ledford, and he did that against Ledford's protest, but Allen said he felt like Ledford was entitled to something for his supervision, although he was not on the job.

There was sufficient evidence upon which the jury could have based a finding for lost wages, and the charge in this respect was authorized by the pleadings and the evidence and was not error.

Subdivisions (b), (c), and (d) of special ground 6 complain about that portion of the above-quoted charge in regard to decreased earning capacity. The uncontradicted evidence showed that Ledford's injuries were permanent, and the doctors testified that his condition would grow worse and that he should not do physical labor. There was evidence to the effect that he was making from $100 to $115 per week before and at the time he was injured, and that he was active and able to do hard manual labor before being injured; that he laid brick, poured concrete, did carpenter work, and would make a hand along with the men who were working under him, when necessary; but that he was not able to do such work since his injury. He superintended his jobs and building contracts previous to his injury, but since has had to hire a foreman to stay on the jobs and do this for him. His foreman testified that Ledford had only been paid for half time for part of the time since his injury; and Ledford testified that he was not able to put in anything like full time now, and that he was trying to get through with his obligations and quit work until he got better; that he had turned down job after job, and if he was well he could get and make three times as much as he was making at the time of the trial. He worked by the hour and not by the job or week.

There was sufficient evidence to furnish the jury a reasonable basis upon which to predicate a finding for diminished earning capacity (Callaway v. Pickard, 68 Ga. App. 637, 646 (6), 23 S. E. 2d, 564); and the charge in this respect, if incorrect, was not harmful against the defendants in the court below. After charging on lost wages, and in immediate connection therewith, the judge told the jury: "You would also, if you find for any future compensa-

tion, reduce the amount to its present cash value figured at the rate of 7 percent per annum. You should also give credit for diminished earnings, if any, for the natural loss of ability to earn. You may give credit to the defendants for such as would be the natural result by reason of growing older, voluntarily abstaining from work, sickness or other similar circumstances—the measure of damages is controlled by proof as to what he lost, if anything." The evidence showed that the plaintiff was permanently injured and that his condition would grow worse, and he testified to the effect that his earning capacity had been decreased two-thirds, that is, that he could make three times what he was making, had he not been injured. The evidence as to his decreased earning capacity showed a greater loss in proportion for future earnings than it did for lost wages from the time of the injury to the time of the trial. The judge charged the jury, if they found for any future compensation, to reduce it to its present cash value, and then said, "You should also give credit for diminished earnings, if any, for the natural loss of ability to earn." The fact that the judge inadvertently used "may," instead of "should," in the next sentence, is not cause for holding that the charge was harmful error. While the charge on decreased earning capacity was general and brief, we do not think that it can be reasonably said that it was harmful against the plaintiffs in error for any reason assigned.

We do not think that the trial judge erred in overruling the motion for new trial for any reason assigned in special ground 6.

■ In special ground 7, error was assigned on the following charge: "The guide for fixing damages, if any, is the enlightened conscience of impartial jurors acting under the sanctity of their oath, and in determining this amount you should take into consideration that the plaintiff is receiving a present cash consideration for damages which have not yet been sustained." This charge was given in connection with and related to damages for pain and suffering, and was not harmful to the plaintiffs in error for any reason assigned. The court did not err in overruling this ground.

■ The verdict was authorized by the evidence, no error harmful to the plaintiffs in error appears, and the court did not err in overruling the motion for a new trial.

Pursuant to the act of the General Assembly, approved March 8, 1945 (Ga. L. 1945, 232), requiring that the full court consider any case in· which one of the judges of a division may dissent, this case was considered and decided by the court as a whole.

*Judgment affirmed. Sutton, C. J., MacIntyre, P. J., Gardner, Parker, and Townsend, JJ., concur. Felton, J., dissents.*

FELTON, J., dissenting. I think that the charge complained of in ground 6 of the amended motion was error for the reason set out in subparagraphs c and d. There was no evidence from which a jury could find what the difference in earnings was before and after the injury, except for a very short period, ten days or two weeks, and any finding by the jury was pure speculation and not a calculation taking into consideration the factors required by law. The plaintiff testified that he could make three times what he was making *at the time of the trial,* but there is no evidence as to what his earnings *at the time of the trial* were, and none from which any reasonably exact amount could be computed. While it is true that there is evidence that the plaintiff was making $115 per week *at the time of the injury,* the plaintiff does not say that he could be making three times this amount, but three times the unknown amount of his earnings at the time of the trial. I know that there is no exact yardstick by which future loss of earnings can be computed, but, before any attempt can be made by a jury to determine such loss, there must be a reasonable basis to start from, and I do not think that there was one in this case so far as future loss is concerned, both as to the time to be lost and the amount to be lost. The charge that the jury "may" give credit to the defendant for the inability of the plaintiff to labor on account of his growing older, etc., left it discretionary with the jury to give this credit or not as they saw fit, whereas, if they found that the plaintiff's capacity to labor would be decreased by virtue of growing older, etc., it was obligatory that the credit for this decrease be given the defendant, and in view of the verdict for $17,000 in this case this charge can hardly be said to have been harmless.