## ATLANTIC COAST LINE R. CO. v. KEY.
### No. 13749.

United States Court of Appeals
Fifth Circuit.
April 15, 1952.

Bernard J. Mayer, LaGrange, Ga., Walter D. Sanders, Newnan, Ga., for appellant.

S. E. Kelly, Jr., William B. Skipworth, Jr., Columbus, Ga., for appellee.

Before SIBLEY, RUSSELL, and RIVES, Circuit Judges.

RUSSELL, Circuit Judge.

Appellee, Mrs. Key, basing jurisdiction of her action upon diversity of citizenship, obtained judgment in the amount of $5,000 for personal injuries sustained as a result of the alleged negligence of the appellant, Atlantic Coast Line Railroad Company, in the operation of its train, which struck the car she was driving while on a public crossing in the municipality of Woodbury, Georgia. In accordance with the Georgia practice of pleading, the complaint alleged specific acts of negligence. By answer, each of these was denied and the defendant also pleaded that the plaintiff was guilty of contributory negligence, upon which was invoked the Georgia rule of comparative negligence, and further, that any injuries, the plaintiff sustained were due solely to her negligence. Upon the trial, and after verdict, by motion for judgment notwithstanding the verdict, the defendant timely urged the point, likewise preserved and presented by this appeal, that the evidence required a verdict in its favor as a matter of law. This attack is two pronged, one, that the evidence fails to show that the defendant was guilty of any negligence whatever; the other, that the evidence, as a matter of law, shows that the injuries to the plaintiff were caused by her own negligence and that the plaintiff, by the exercise of ordinary care, could have avoided the consequences to herself of the defendant's negligence, if any could be considered established.

Our examination of the testimony and the record leads to the conclusion that neither of the appellant's contentions are effectively maintained. As is usual in such cases, there are disputes in the evidence as to the physical surroundings of the crossing at which the collision occurred. It is true that Mrs. Key lived within 200 or 300 yards of the crossing and was familiar with it. There is substantial dispute as to the distance from the railroad tracks at which one first has a clear and unobstructed view to the left in the direction from which the train was approaching at the time in question. From the testimony of some of the witnesses, the jury would have been authorized to find that a peach packing shed, in which was stored various articles, together with the topography of the location, rendered it impossible to see the train approaching until one was within a very short distance of the track. It appears that the plaintiff was driving 10 to 15 miles per hour, and the train, approaching the crossing at about 20 miles per hour, was slowing down for the depot and to cut out four freight cars of its load to be placed on the spur track. She testified that she stopped her car at a crossing sign some 100 feet from the track, looked in both directions, but did not see or hear the train, though the left window of her car, on which side she was sitting, was down. She testified that she heard no whistle blowing or bell ringing, "and had a whistle blown or a bell rung, this accident would not have happened." Witnesses for the defendant testified positively that the bell was ringing. It is clear that the whistle had been blown, but room for doubt whether at a crossing some distance beyond the place of the collision or as this crossing was approached. After stopping, the plaintiff proceeded on to the tracks, and, becoming then aware of the approach of the train, cut sharply to the right and nearly cleared the engine, but was struck by the pilot on the left of the drawhead and dragged some 225 feet down the track. The engineer of the train testified that he saw the plaintiff approaching the track 100 or 150 feet away, at which time he was about the same distance from the crossing; that she was looking straight ahead and did not stop. The jury could have found that at this time he gave no further warning by whistle. He made no additional application of brakes, but he had already set the service brakes in preparation for the stop. The crossing was not protected by either signal devices or a watchman, and absence of these was specified as negligence, as was the failure to anticipate plaintiff's presence and to take precaution against in-

flicting injuries upon her, as well as the failure to blow the whistle to warn vehicular traffic of the operation of the locomotive. It was also charged that the defendant was negligent in failing to keep a lookout ahead and in failing to toll the bell as required by Georgia law.

■ If the plaintiff produced evidence sufficient for the jury to find that the defendant was negligent in any one of the particulars charged and that such negligence was a proximate cause of the plaintiff's injuries, the trial Court could not properly take the case from the jury and determine it as a matter of law. Under the ruling of the Georgia Court in Seaboard Air-Line Railway v. Hollis, 20 Ga. App. 555, 557, 93 S.E. 264, it may well be doubted that the evidence of the plaintiff as to the ringing of the bell was of that negative character which requires that credence be given to positive evidence to the contrary. While the Georgia blow-post law, Code, § 94–506, does not apply in municipalities, so that a failure to blow the whistle for a crossing therein is not a violation of the statute and thus negligence *per se,* nevertheless, it is well established that such use of the whistle may be required in the exercise of ordinary care. As stated in Pollard v. Savage, 55 Ga.App. 470, 474, 190 S.E. 423, 425, "Whether [or not] ordinary care is exercised depends on the circumstances of the case * * *. What is the exercise of ordinary care, under the circumstances, is ordinarily for determination by the jury. The requirement in Code, § 94–507, of certain duties of a railway company within the limits of a municipality, does not relieve it from doing what ordinary care otherwise requires to be done. * * * 'Independently of the provisions of the statute regulating the operation of railroad trains on approaching public crossings, there rests upon the railroad company a duty to exercise ordinary care, and a failure of the servants of a railroad company operating its train to give any signal by bell, whistle, or otherwise * * * might, in the opinion of the jury, constitute actual negligence, in the light of the surrounding facts and circumstances.' Seaboard Air-Line Ry. Co. v. Benton, 43 Ga.App. 495, 497,

159 S.E. 717, 719, and cit. * * * That the proper exercise of ordinary care might in some cases require the blowing of a whistle, has been recognized in Western & Atlantic Railroad v. Michael, 44 Ga.App. 503, 505, 162 S.E. 294". See also Cordray v. Savannah Electric Co., 5 Ga.App. 625, 633, 63 S.E. 710, cited in the Pollard case, supra, and Powell v. Jarrell, 65 Ga.App. 453, 463, 16 S.E.2d 198. Furthermore, in this case the Court charged the jury that they could consider the absence of signal devices or a watchman at the crossing in question upon the basis of the requirement of ordinary care, even though there was no statute requiring such means of warning. The defendant took no exception to this charge.

■ We conclude that in the circumstances of this case the evidence presents issues of fact as to the extent of negligence of the parties, so it cannot be said as a matter of law that the defendant was in no wise negligent. The question was for the jury to determine.

■■ It is established beyond any possible dispute that under Georgia law the mere failure of a driver of an automobile to stop, look and listen before crossing a railroad track does not establish negligence as a matter of law. "That doctrine does not prevail in Georgia." Callaway v. Pickard, 68 Ga.App. 637, 642, 23 S.E.2d 564, 570, and citations. "Accordingly, such an attempt to cross the track by one not aware of the approach of a train cannot as a matter of law, be said to constitute such contributory negligence as will bar a recovery." Reed v. Southern Railway Company, 37 Ga.App. 550, 140 S.E. 921, 923. It is only in the rare case where the evidence demands a finding that the plaintiff was, or in the exercise of due care should have been, aware of the approaching train that further progress in crossing the track may in itself be held a bar to recovery. In all other instances, the question is one for the jury to determine under all the circumstances whether the attempt to cross the track without stopping or looking or listening is a failure to observe ordinary care. Atlanta & West Point R. Co. v. Gilbert, 82 Ga.App. 244, 246, 60 S.E.2d 787.

The above rulings are but specific applications of the well established Georgia jurisprudence that "questions of negligence, including contributory negligence, questions as to what negligence constitutes the proximate cause of the injury, and questions as to whether the plaintiff could, by the exercise of ordinary care, have avoided the consequences of the defendant's negligence after it had, or should have, become known, are such as lie peculiarly within the province of the jury to determine. (L[ouisville] & N. R. Co. v. Stafford, 146 Ga. 206, 91 S.E. 29; Central of Ga. Ry. Co. v. Larsen, 19 Ga.App. 413, 91 S.E. 517; Central of Ga. Ry. Co. v. Barnett, 35 Ga.App. 528[1], 530[1], 134 S.E. 126)". Reed v. Southern Railway Co., supra. Such questions will not be determined by the Court as a matter of law, except in plain and undisputed cases. Callaway v. Pickard, supra. Cf. Seaboard Air Line R. Co. v. Deese, 5 Cir., 185 F.2d 290. Furthermore, contributory negligence of the plaintiff which does not equal, or exceed the negligence of the defendant does not defeat the recovery of damages but diminishes the amount thereof "in proportion to the amount of fault attributable to" the plaintiff. Georgia Code, 1933, § 94–703.

In this case the questions of the existence and extent of negligence upon the part of both the plaintiff and the defendant, of contributory negligence, and of proximate cause could not be determined as a matter of law, and the trial Court did not err in so holding.

Judgment affirmed.