Barbara R. GROSS, Plaintiff-Appellant,

v.

SOUTHERN RAILWAY COMPANY,
Defendant-Appellee.

Nancy Ruth CANIPELLI, Plaintiff-
Appellant,

v.

SOUTHERN RAILWAY COMPANY,
Defendant-Appellee.

No. 26650.

United States Court of Appeals
Fifth Circuit.

May 30, 1969.

H. T. O'Neal, Jr., Robert S. Slocumb, Manley F. Brown, Adams, O'Neal, Steele, Thornton & Hemingway, Macon, Ga., for appellants.

John B. Harris, Jr., Joseph H. Davis, Joseph H. Chambless, Macon, Ga., for appellee; Harris, Russell D. Watkins, Macon, Ga., of counsel.

Before COLEMAN and GOLDBERG, Circuit Judges, and SKELTON, Judge of the Court of Claims.*

SKELTON, Judge:

The present litigation involves two damage suits growing out of a collision between an automobile and a freight train at a railroad crossing which resulted in the death of one person and serious injuries to the other. The cases were consolidated for the purpose of trial. After a pretrial hearing, the trial court granted defendant's motions for summary judgment and the plaintiffs have jointly appealed to this court from the judgment of the trial court. We reverse the decision of the court below and remand the case to the trial court for a trial, because, in our opinion, there are genuine issues of material fact that should have been submitted to a jury.

The learned trial judge filed a comprehensive and well prepared memorandum opinion in the case, but we reach different conclusions to those set forth in his opinion.[1]

These two cases were removed from the Superior Court of Monroe County, Georgia, by the defendant railway company, a Virginia corporation having its principal place of business in the District of Columbia. The cases arise out of a collision between the 30th car of the defendant's moving freight train and an automobile owned by Nancy Ruth Canipelli, the plaintiff in Civil Action No. 2325, and operated by the deceased, Don C. Gross, Jr., the son of the plaintiff, Barbara R. Gross, in Civil Action No. 2324. The collision occurred in Monroe County at a railroad crossing on a gradual curve of Highway 74. At that point the highway and the tracks do not form right angles but make a pattern in the shape of an "X". In general, it may be said that the tracks run north and south and the highway runs east and west. Parallel to and about 15 feet west of that stretch of track south of the crossing is a paved road which intersects but does not cross the highway. There is a stop sign compelling traffic approaching the highway on this side road to stop before entering the highway. A few feet east of the crossing there was a sign comply-

---

* Sitting by designation as a member of this panel.

1. We have adopted most of the trial judge's statement of facts, with some additions and changes.

ing with the following regulation of the Public Service Commission of the State of Georgia:

"Ordered: That the Railroad Commission [now Georgia Public Service Commission. See Ga.Laws 1922, p. 143] of Georgia does hereby designate as the standard sign to be erected and used at all crossings of railroads by public highways, in this State, under the provisions of the Act of the General Assembly of Georgia, what is commonly known as the 'X' sign, the same being a sign in the form of the letter 'X' by Boards crossed on an upright post. The boards forming the 'X' shall be not less than six (6) inches wide and four (4) feet in length, and shall be painted white, bearing on both sides in black painted letters not less than four and one-half (4½) inches high, the words 'RAILROAD CROSSING.' The lowest point of the boards shall be not less than eight (8) feet above the surface of the ground. The sign shall be so placed as to be plainly visible to persons using said highways, approaching the railroad from either direction."

FURTHER ORDERED: that standard signs as herein designated shall be erected by each railroad within the State of Georgia within eighteen months after February 1, 1919, that is to say, by August 1, 1920."

There was no such sign on the west side of the crossing, but on Highway 74 about 430 feet west of the crossing facing the Canipelli car there was a standard round yellow sign with a black diagonal cross and the letters "RR." There was also a standard red octagonal stop sign on the west side of the crossing facing traffic going east. Although the crossing is on a gradual curve, there is an unobstructed view of the crossing from a point substantially west of this yellow sign.

On the morning of September 14, 1967, the deceased and Miss Canipelli drove from Macon to Callaway Gardens and passed over this railroad crossing for the first time. About 8:30 that night Gross, accompanied by Miss Canipelli, was driving the Canipelli car back to Macon in an easterly direction on Highway 74. Both were unfamiliar with this highway and crossing and, in fact, lost their way and had to ask directions along the road before reaching the crossing. There is no allegation of unlawful speed on the part of Gross, and it may be assumed that he was traveling at the maximum lawful speed of 50 m. p. h. as suggested by the plaintiffs' counsel. The weather was clear and it was dark. When they reached the vicinity of the crossing, there were two motor vehicles with headlights on that were traveling in a northerly direction toward Highway 74 along the side road that runs along the west side of the railroad. A member of the train crew estimated that these two vehicles were several hundred yards behind the engine of the train when it passed over the crossing. These vehicles turned to the left on Highway 74 when they reached it and proceeded in a westerly direction, as they could not go to the right because the train was on the crossing. As Gross and Miss Canipelli approached the crossing, Gross dimmed his lights in response to the flashing of headlights by the driver of one of the approaching cars which had come onto the highway from the paved side road near the crossing. It is not clear exactly how far from the crossing the Canipelli car met and passed this other car, but on page 30 of Miss Canipelli's deposition she states: "I remember seeing the lights and hitting the train almost at the same exact time, so it would have had to have been close."

There is a conflict as to whether or not the engineer blew the whistle in accordance with Ga.Code Ann. § 94–506 (1956 Rev.). At page 9 of the deposition of engineer White, he states that he rang the bell and blew the prescribed whistle beginning at the blowpost, which is 400 yards from the center of the crossing, and ending at the crossing. His testimony is corroborated by that of the trainman and the conductor. On page 33 of Miss Canipelli's deposition, she states that the whistle did not blow, and that she knows

that this is so because she could have heard it if it had blown. On page 34 of her deposition she further states that she does not remember Gross slowing down or applying his brakes before the collision. She states also that he never changed direction prior to the collision.

The Canipelli car struck the 30th car of the northbound freight train demolishing the automobile, killing Gross and injuring Miss Canipelli. Gross' mother asks $165,000 and Miss Canipelli asks $75,000 damages.

Both plaintiffs allege that the defendant was negligent in four particulars: (1) in failing to have an "X" sign at the crossing that is visible to motorists approaching from the west in violation of the regulation of the Public Service Commission quoted above; (2) in failing to have at the crossing either flashing lights, automatic gates, an electric buzzer system, or a human watchman to give special warning of the train; (3) in blocking the highway with a dark train at nighttime without giving any warning whatsoever of the obstruction; and (4) in failing to blow the whistle of the train as it approached the crossing, in violation of the laws of Georgia.

■ The Supreme Court held in the case of Sartor v. Arkansas Gas Corp., 321 U.S. 620, 627, 64 S.Ct. 724, 728, 88 L.Ed. 967 (1944):

> * * * Rule 56 authorizes summary judgment only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, that no genuine issue remains for trial, and that the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try. * * *.

■ Rule 56 is a valuable rule that is useful in the speedy disposition of cases where there is no issue to be tried. However, it is rarely used in negligence cases. There is a general rule that has been followed and approved by this court many times to the effect that issues of negligence, contributory negligence and proximate cause, the resolution of which requires the determination of the reasonableness of the acts and conduct of the parties under all the facts and circumstances of the case, cannot ordinarily be disposed of by summary judgment. See St. John v. New Amsterdam Casualty Co., 5 Cir. 1966, 357 F.2d 327, 328; Dornton v. Darby, 5 Cir. 1967, 373 F.2d 619, 621; Melton v. Greyhound Corp., 5 Cir. 1965, 354 F.2d 970, 972–973; Alabama Great So. R. Co. v. Louisville & Nashville R. Co., 5 Cir. 1955, 224 F.2d 1, 5; Taff v. Singer Sewing Machine Co., 5 Cir. 1964, 331 F.2d 405, 407; Roucher v. Traders & General Insurance Co., 5 Cir. 1956, 235 F.2d 423, 424; Stace v. Watson, 5 Cir. 1963, 316 F.2d 715, 716. See also, 6 Moore's Federal Practice, § 561.-17(42) p. 2232.

The rule was stated in St. John v. New Amsterdam Casualty Co., *supra,* as follows:

> * * * It is likewise true that issues of negligence, contributory negligence and probable cause cannot ordinarily be determined on summary judgment. * * *. *Id.* at 328.

This court stated in Melton v. Greyhound Corp., *supra,* after citing the decision of the Supreme Court in Sartor v. Arkansas National Gas Corp., *supra:*

> * * * Important to the present case is the recognition by this Court "that as a general proposition the issue of negligence * * * is ordinarily not susceptible of summary adjudication", but should be resolved by trial in the ordinary manner. * * *. *Id.* at 972–973.

The reason for the rule was stated by the court in Gauck v. Meleski, 5 Cir. 1965, 346 F.2d 433, 437 as follows:

> Because of the peculiarly elusive nature of the term "negligence" and the necessity that the trier of facts pass upon the reasonableness of the conduct in all the circumstances in determining whether it constitutes negligence, it is the rare personal injury case which can be disposed of by summary judgment, even where the historical

facts are concededly undisputed. * * *.

The court also explained the basis for the rule in Harvey v. Great Atlantic & Pacific Tea Co., 5 Cir. 1968, 388 F.2d 123, 125, by stating:

* * * We have recognized that a personal injuries case based on negligence, such as the one now before us, may rarely be disposed of by summary judgment. This is because of the elusive nature of the concept of negligence, the determination of the existence of which requires the forming of a judgment as to the reasonableness of the conduct of the parties in the light of all the circumstances of the case. Gauck v. Meleski, 5 Cir. 1965, 346 F.2d 433, 437; Melton v. Greyhound Corporation, 5 Cir. 1965, 354 F.2d 970, 972–973. If reasonable minds could draw different inferences and reach different conclusions from the facts the issue must be reserved for trial. Marsden v. Patane, 5 Cir. 1967, 380 F.2d 489, 491.

■ It is also well settled that in considering a motion for summary judgment, the court has no duty or function to try or decide factual issues. Its only duty is to determine whether or not there is an issue of fact to be tried. Chappell v. Goltsman, 5 Cir. 1950, 186 F.2d 215, 218; and Slagle v. United States, 5 Cir. 1956, 228 F.2d 673, 678. Furthermore, all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. United States v. Diebold, Inc., 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed. 176 (1962). Also, all doubt as to the existence of a genuine issue of material fact must be resolved against the party moving for summary judgment. Hawkins v. Frick-Reid Supply Corp., 5 Cir. 1946, 154 F.2d 88, 89–90. In passing on such a motion, the court should not assess the probative value of any of the evidence. This was made clear in the case of Gauck v. Meleski, *supra,* when the court said:

* * * The trial court should be very careful, however, to avoid assessing the probative value of any evidence presented to it, for this would be an unwarranted extension of the summary judgment device. Assessment of the probative value of evidence is properly the function of the jury or the judge sitting as a trier of facts. *Id.* at 436.

Bearing these principles in mind, we will now examine the contentions of the parties as shown by the pleadings, affidavits, exhibits, and depositions on file to determine whether or not there were issues of fact that should have been submitted to a jury.

I

### The Regulation Requiring the Crossbuck Sign

■ The plaintiffs contend that the defendant was guilty of negligence as a matter of law by failing to have a crossbuck railroad sign at the crossing that was plainly visible to persons approaching the crossing from the west at the time and place of the accident in this case as required by the regulation of the Georgia Railroad Commission. They allege that because of the presence of the train on the crossing the crossbuck sign on the east side of the crossing was not plainly visible to persons approaching the crossing from the west, because the train completely obscured the sign. The defendant, on the other hand, says that the sign on the east side of the crossing could be seen by a motorist approaching from the west.

We conclude that this was a disputed issue of fact that should have been submitted to a jury, and that it could not be resolved by a construction of the regulation by the court to the effect that the sign was "plainly visible" because it was built according to prescribed measurements even though a train on the crossing obstructed the visibility of the sign by the approaching motorist. The jury could find as a fact that the sign was not plainly visible under the circumstances existing at the time and place in question.

## II

### Special Circumstances Require Special Warnings

■ There is a doctrine or rule in the State of Georgia that special circumstances existing at a given time and place require a railroad, in the exercise of ordinary care for the safety of others, to place a guard, light, or other warning at a proper point at or near a railroad crossing to give notice for the time being that the street or crossing is obstructed. Mann v. Central of Georgia Railway Co., 43 Ga.App. 708, 160 S.E. 131 (1931); Georgia, Ashburn, Sylvester, & C. Ry. Co. v. Rutherford, 104 Ga.App. 41, 50, 121 S.E.2d 159 (1961); Savannah & Atlanta Ry. Co. v. Newsome, 90 Ga.App. 390, 83 S.E.2d 80 (1954).

The plaintiffs say that there were special circumstances existing at and near the crossing in the instant case at the time of the accident that require the application of this doctrine to the case. They point to the fact that they were strangers to the area and were traveling at night at a legal rate of speed of 50 miles per hour on Highway 74 in an easterly direction toward the railroad crossing, the existence of which was unknown to them at the time. The highway was made of asphalt and was dark in color. As they neared the crossing, the highway curved to the right. There was a side road running north and south parallel to the railroad and about 15 feet west of the track that dead-ends into Highway 74 on which plaintiffs were traveling. There were two motor vehicles with headlights on traveling north on this side road several hundred yards behind the engine of the train when it passed over the crossing according to two members of the train crew. They testified by deposition that the lights from these cars blinded their eyes as they looked to the rear of the train. The plaintiff Canipelli testified by deposition that she remembered seeing the lights of one of the cars when it came out of the side road and proceeded toward the car of plaintiffs. At that point, Gross dimmed the lights of plaintiffs' car as required by law as the two cars approached each other. Almost immediately thereafter, the plaintiffs' car collided with the thirtieth car of the train. Plaintiff Canipelli never saw the train until the moment of impact. It can be assumed that Gross did not see it because he did not apply his brakes nor swerve the car to one side. He was killed by the impact. The plaintiffs also point to the fact that it was a dark night and there were no railroad warning signs, lights, signals, notices, bells, buzzers, guards, or other warnings of any kind at the crossing. They also emphasize that the railroad crossbuck sign on the east side of the crossing was not visible because of the train.

The plaintiffs contend that all of these facts constituted special circumstances requiring special warnings by the railroad at the crossing. Accordingly, they say the special circumstances doctrine described above is applicable.

The defendant says that the crossing is no more dangerous than other crossings and there were no circumstances which required it to provide special warnings to approaching travelers. It points out that there was a yellow and black railroad sign erected by the highway department 430 feet west of the crossing and at that point there is a clear and unobstructed view of the crossing. Also, there is an unobstructed red stop sign of the highway department 15 feet west of the crossing. It contends that the driver of plaintiffs' car should have seen the highway signs and if he did not, he should have seen them. Furthermore, it says the presence of the train on the crossing was a warning to Gross of the danger and cites the cases of Atlanta & St. Andrews Bay Ry. v. Church, 5 Cir. 1954, 212 F. 2d 688, 691 and Wood v. Atlantic Coast Line RR, M.D.Ga.1960, 192 F.Supp. 351, aff'd, 5 Cir. 1961, 290 F.2d 220. Defendant calls the rule described in these cases the "standing train doc-

trine" and says that it is applicable here. This doctrine is set forth in the *Church* case as follows:

> * * * [T]he rule is that in a case *presenting no special circumstances,* one who drives headlong into a train standing across the highway cannot complain of negligence because no special warning of the presence of the train was given. This is so because the train itself standing starkly there is a warning. [Emphasis supplied.] *Id.* at 691.

However, in that case the court held that there was evidence as to circumstances or conditions in the case which prevented the application of the rule. The court said:

> * * * [I]t is a question for the jury whether the circumstances of the stopping and standing of the train constituted negligence. * * *. *Id.* at 691.

The case of Wood v. Atlantic Coast Line RR, *supra,* makes it clear that if there is something unusual or extraordinary about the situation at the crossing (special circumstances) an automobile driver will be excused for not seeing a train on the crossing, and conversely the railroad will be subjected to the duty of giving a warning of its presence. However, in that case it was determined that there were no peculiar circumstances at or near the crossing. We think the case is clearly distinguishable on the facts from our case. There the evidence showed the motorist could have seen the train 475 feet before he reached it. There was no other traffic on the road. The road was straight and without curves. Just ahead of the railroad car with which the motorist collided there were 5 or 6 cars which were partly covered with prismo reflective paint. The whistle of the train was blown 1,200 feet before it reached the crossing and it continued blowing until after it passed over the crossing. (We must assume the whistle did not blow in our case because of the testimony of plaintiff Canipelli.) The motorist had lived in the locality of the crossing for 6 or 7 years and had crossed over it 4 or 5 times a week during the year preceding the collision (between 208 and 260 times). He was thoroughly familiar with the crossing. Also, he had drunk 2 or 3 cans of beer and a drink of whiskey shortly before the collision.

None of the foregoing facts were present in our case. As a matter of fact, the converse of each of such facts existed in our case. Accordingly, we do not think that case is authority for invoking the standing train doctrine in the case at bar.

In any event, the standing train rule is never invoked if special circumstances exist at the crossing. Whether or not such circumstances exist is a question of fact for the jury. This was the holding of the court in the *Church* case, *supra.* Also, in the case of Georgia, Ashburn, Sylvester, & C. Ry. Co. v. Rutherford, *supra,* the court said:

> * * * [A]s reasonable minds might differ on these questions [special circumstances at the crossing], they are necessarily for a jury's determination and not for the court, except in clear, palpable, plain, and indisputable cases. *Id.* at 50, 121 S.E.2d at 165.

The case of Missouri, K. & T. Ry. Co. v. Long, 299 S.W. 854 (Tex.Com.App. 1927), 2d trial, 23 S.W.2d 401 (Tex.Civ. App.1929), is in point. While this was a Texas case, it involves the same principle. There the motorist approached the crossing at night on a downgrade. A train was passing over the crossing and he collided with it. There were no warning signals or devices at the crossing. He had never traveled over the crossing before. The motorist contended that the crossing was more than ordinarily dangerous because the lights from the city on the other side of the train were shining in his eyes over the top of the train and blinding him so that he could not see the train. The Supreme Court of Texas, in adopting an opinion of the Commission of Appeals, held that the question of whether or not the crossing was more than ordi-

narily dangerous under the facts and circumstances (*i. e.*, if special circumstances existed) was one of fact to be determined by a jury.

It should be pointed out that conditions at a railroad crossing change from one time to another and especially from daytime to nighttime. A warning might not be required at one time and yet it might be negligence to fail to provide one at another time. This was the holding of this court in Texas-New Mexico Ry. Co. v. Bailey, 5 Cir. 1953, 203 F.2d 647. Other cases to the same effect are cited in that opinion. This is particularly important in our case because it might appear that no special circumstances requiring warnings existed in the daytime, but the converse might have been true at night under the conditions existing at the time of the collision, which was the crucial time.

We conclude that the question of whether or not special circumstances requiring special warnings existed at the crossing under all of the facts and circumstances at the time of the collision was a question of fact that should have been submitted to a jury.

### III

#### *Blowing of the Whistle*

The plaintiffs alleged that the engineer of defendant's train was guilty of negligence per se in that he did not blow the whistle on the engine when it reached the blowpost 400 yards from the crossing and thereafter as required by Section 94–506 of the Georgia Code Annotated (1958 Rev.). The train crew testified that the whistle was blown, but plaintiff Canipelli said it did not blow because she would have heard it if it had blown. The jury could have inferred and found from this evidence that the whistle was not blown. Climer v. Southern Ry. Co., 43 Ga.App. 650, 159 S.E. 782 (1931); and Callaway v. Cox, 74 Ga. App. 555, 40 S.E.2d 578, 582. The ques-

tion should have been submitted to a jury.

It has been held by the courts in Georgia that the failure to blow a whistle on a train as required by law is negligence per se. Davis v. Whitcomb, 30 Ga.App. 497, 118 S.E. 488 (1923); Seaboard Air Line Ry. v. Hollis, 20 Ga. App. 555, 93 S.E. 264 (1917); and Callaway v. Cox, *supra*. Such negligence is sufficient to impose liability on the railroad if it is the proximate cause of the collision. Proximate cause is ordinarily a question for the jury. Stanaland v. Atlantic Coast Line R. Co., 5 Cir. 1951, 192 F.2d 432, 434. In that case the court said:

> In Georgia it is well recognized that questions of diligence and negligence, including comparative negligence *and proximate cause*, are peculiarly for the determination of the jury, and will not be determined by the courts as a matter of law except in palpably clear, plain and undisputed cases. Lanier v. Turner, 73 Ga.App. 749, 38 S.E.2d 55; Callaway v. Pickard, 68 Ga.App. 637, 23 S.E.2d 564; Bach v. Bragg Bros., 53 Ga.App. 574, 186 S.E. 711; Atlantic Coast Line R. Co. v. Dickson, 70 Ga. App. 590, 28 S.E.2d 879. [Emphasis supplied.]

We hold that on the facts before us, these issues should have been submitted to a jury.

### IV

#### *Comparative Negligence*

Under the laws of Georgia, contributory negligence does not bar a recovery by the plaintiff unless his negligence is equal to or greater than that of the defendant. If they are both negligent, but plaintiff's negligence is less than that of defendant, plaintiff may recover, but his damages will be diminished by the jury in proportion to the amount of fault attributable to him.[2]

The defendant contends that the driver of plaintiff's car was negli-

---

2. Section 94–703, Georgia Code Annotated.

gent as a matter of law in the various particulars already pointed out, and that his negligence was equal to or greater than that of the defendant, if defendant can be said to be negligent at all. The trial court ruled in favor of defendant on this question as a matter of law. The plaintiffs say this was error because the question of comparative negligence is required to be determined by a jury. We agree.

 Without repeating the facts which we have set forth above, we will consider whether or not comparative negligence should be submitted to the jury in this case. We are of the opinion that under the facts before us the jury could find both parties guilty of negligence. It is well established that "except in palpably clear, plain and undisputed cases," of which this is not one, questions of negligence and contributory negligence must be decided by a jury. This principle was very well stated in Southern Ry. Co. v. United States, 5 Cir. 1952, 197 F.2d 922, 925 where the court said:

There is no fixed standard in the law by which a court may say in every case what conduct shall be considered reasonable and prudent, and what shall constitute due care in approaching a crossing under any and all circumstances. Accordingly, the law has relegated the determination of such questions to the trier of facts. It is for them to note the special circumstances and surroundings of each particular case and then say whether the conduct of the parties measured up to the standard required by law. Moreover, it is settled Georgia law that questions of negligence, including contributory negligence, comparative negligence, and what negligence constitutes the proximate cause of the injury, are all questions of fact and will not be determined by the courts as a matter of law except in palpably clear, plain, and undisputed cases. Atlantic Coast Line Railway v. Key, 5 Cir., 196 F.2d 64;

Stanaland v. Atlantic Coast Line Ry., 5 Cir., 192 F.2d 432. * * *.

See also Iler v. Seaboard Air Line Co., 5 Cir., 1954, 214 F.2d 385, 388; and Stanaland v. Atlantic Coast Line R. Co., *supra*, and the cases therein cited; and Seaboard Air Line R. Co. v. Deese, 5 Cir., 1950, 185 F.2d 290.

The foregoing authorities recognize the well established Georgia rule that ordinarily questions of negligence, contributory negligence and *comparative* negligence are to be determined by a jury. The court dealt specifically with comparative negligence in Southern Ry. Co. v. Haynes, 5 Cir., 1961, 293 F.2d 291, 293 when it held that this question is *exclusively* one for the jury and that it was so well settled no further citation of authority was necessary in support of it. In this connection, the court said:

* * * As has been so many times said by this Court in cases arising in Georgia, the question of comparative negligence on the part of the parties is exclusively a jury question and not a question that may be determined by the Court as a matter of law. Georgia Code, Section 94–506; Georgia Code, Section 94–703; Georgia Code, Section 105–603; Seaboard Airline R. v. Deese, 5 Cir., 185 F.2d 290; Atlantic Coast Line R. Co. v. Key, 5 Cir., 196 F.2d 64; Atlantic Coast Line R. Co. v. Kammerer, 5 Cir., 239 F.2d 115; Georgia Railroad & Banking Co. v. Otts, 5 Cir., 245 F.2d 561; Southern Railway Company v. Jolley, 5 Cir., 267 F.2d 934. This matter is so well settled under Georgia law that further consideration of it and citations of further authorities appear wholly unnecessary. *Id.* at 293–294.

It should be remembered that the statute itself (Section 94–703, Georgia Code Annotated) provides that if the plaintiff and defendant are both at fault, the plaintiff may recover "but the damages shall be diminished by the *jury* in proportion to the amount of fault attributable to him." [Emphasis supplied.]

## V

### Duty of Avoidance

Section 105–603 of the Georgia Code Annotated sets forth the avoidance rule as follows:

If the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover. In other cases the defendant is not relieved, although the plaintiff may in some way have contributed to the injury sustained.

This rule is defined in Wilson v. Pollard, 62 Ga.App. 781, 10 S.E.2d 407 (1940), in the following language:

A person can not be charged with the duty of using any degree of care and diligence to avoid the negligence of a wrongdoer until he has reason to apprehend the existence of such negligence. The duty imposed by law upon all persons to exercise ordinary care to avoid the consequences of another's negligence does not arise until the negligence of such other is existing, and is either apparent, or the circumstances are such that an ordinarily prudent person would have reason to apprehend its existence * * *. Failure to exercise ordinary care on the part of the person injured before the negligence complained of is apparent or should have been reasonably apprehended will not preclude a recovery.

See also Bach v. Bragg Brothers, 53 Ga. App. 574, 186 S.E. 711 (1936); Central of Georgia Ry. Co. v. Larsen, 19 Ga.App. 413, 91 S.E. 517 (1916); and Freeman v. Nashville Ry. Co., 120 Ga. 469, 47 S.E. 931 (1904).

In the case of Stanaland v. Atlantic Coast Line R. Co., 5 Cir. 1951, 192 F.2d 432, 434, the court said:

* * * This duty on the part of the plaintiff to exercise ordinary care to avoid the consequences of the defendant's negligence necessarily applies to a situation where there is opportunity to avoid the consequences and does not

arise until the negligence of the defendant becomes apparent, or the circumstances are such that an ordinary, prudent person would apprehend its existence. Western & A. R. Co. v. Ferguson, 113 Ga. 708, 39 S.E. 306, 54 L.R.A. 802.

The defendant says that this rule bars plaintiffs' recovery here because the driver of plaintiffs' car failed to heed the warnings and instructions of the two highway signs on highway 74 in violation of Sections 68–1504(6) (a) and 68–1610(c) of the Georgia Code Annotated, and that in so failing he was guilty of negligence per se. Even if Gross was thus guilty of negligence, such negligence does not automatically invoke the rule of avoidance so as to bar a recovery by the plaintiffs. This is a jury question. See Atlantic Coast Line R. Co. v. Key, 5 Cir. 1952, 196 F.2d 64, 67, where the court said:

" * * * [Q]uestions as to whether the plaintiff could, by the exercise of ordinary care, have avoided the consequences of the defendant's negligence after it had, or should have, become known, are such as lie peculiarly within the province of the jury to determine (L[ouisville] & N. R. Co. v. Stafford, 146 Ga. 206, 91 S.E. 29; Central of Ga. Ry. Co. v. Larsen, 19 Ga. App. 413, 91 S.E. 517; Central of Ga. Ry. Co. v. Barnett, 35 Ga.App. 528 [1], 530 [1], 134 S.E. 126)". Reed v. Southern Railway Co., supra. [37 Ga. App. 550, 140 S.E. 921, 923.] Such questions will not be determined by the Court as a matter of law, except in plain and undisputed cases. Callaway v. Pickard, supra. [68 Ga.App. 637, 642, 23 S.E.2d 564, 570.] Cf. Seaboard Air Line R. Co. v. Deese, 5 Cir., 185 F.2d 290. * * *.

To the same effect is the statement of the court in Central of Georgia Ry. Co. v. Barnett, 35 Ga.App. 528, 134 S.E. 126, 128 as follows:

* * * [Q]uestions as to whether the plaintiff could have avoided the consequences of defendant's negligence by

the exercise of ordinary diligence, are such as lie peculiarly within the province of the jury to determine.[3]

The defendant makes the same argument with reference to the alleged violation by Gross of Section 68–1661 of the Georgia Code Annotated, which provides as follows:

Whenever any person driving a vehicle approaches a railroad grade crossing, the driver of such vehicle shall stop within 50 feet but not less than 15 feet from the nearest rail of such railroad, and shall not proceed until he can do so safely, when:

\* \* \* \* \* \*

(c) An approaching train is plainly visible and is in hazardous proximity to such crossing.

■ The defendant alleges that Gross violated this statute and was therefore negligent as a matter of law and that such negligence bars a recovery by plaintiffs under the avoidance rule. We do not agree. The reasoning set forth above negates this contention. Furthermore, even if Gross did not stop within 50 feet but not less than 15 feet from the nearest rail, and the evidence before us shows that he did not, he is not automatically guilty of violating this statute. Before the statute is applicable, the train (1) must be approaching the crossing; (2) must be plainly visible; and (3) must be in hazardous proximity to the crossing. This was the holding of the Supreme Court of Texas in the case of Missouri-Kansas-Texas Railroad Co. of Texas v. McFerrin, 156 Tex. 69, 291 S.W.2d 931 (1956), in interpreting a substantially similar Texas statute, namely, Article 6701d, Section 86(d), Vernon's Annotated Civil Statutes. That was a landmark case in Texas in construing this statute.[4] It was cited with approval by this court in Texas & New Orleans R. Co. v. Dairyland Transp. Corp., 5 Cir. 1959, 266 F.2d 283, where

we quoted extensively from it. There we said:

The statute has been construed by the Courts of Civil Appeals of Texas in many cases, some of which are collected by the Supreme Court of Texas in its first definitive construction of the statute. Missouri-Kansas-Texas Railroad Co. v. McFerrin, Tex.Civ. App.1956, 291 S.W.2d 931, 934. The Texas Supreme Court again construed the statute in Texas & New Orleans R. Co. v. Day, Tex.1958, 316 S.W.2d 402.

In the McFerrin case, supra, the Texas Supreme Court construed the statute in presently pertinent part as follows:

"As we analyze the statute it imposes two duties on a motorist approaching a grade crossing: (1) a duty to stop the vehicle within fifty but not less than fifteen feet from the nearest rail, and (2) a duty on one having thus stopped not to proceed until he can do so safely. \* \* \*

" \* \* \* Neither duty comes into existence unless and until these three conditions exist: (1) A train must be 'approaching' the crossing; (2) the approaching train must be 'plainly visible', and (3) the train must be 'in hazardous proximity' to the crossing. \* \* \* *Id.* at 285.

\* \* \* \* \* \*

It is clear that this statute does not apply to the instant case, because the very first condition required by the statute, as pointed out in the *McFerrin* case, is not present, namely, the train was not "approaching" the crossing, but had already passed over it when Gross approached it in plaintiffs' car.

■ Even if it could be said, *arguendo*, that this statute is applicable to our case, we still have a jury question as to whether or not the train was, or should have been, "plainly visible" to Gross, in

---

3. This statement was cited and quoted with approval in Southern Railway Co. v. Jolley, 5 Cir. 1959, 267 F.2d 934, 936.

4. The writer was the attorney for the plaintiffs in the McFerrin case when he was a practicing attorney in Texas.

the exercise of ordinary care, as he approached the crossing. In this regard, this court quoted further from the *McFerrin* case in the *Dairyland* case as follows:

"If there is a duty on the motorist to act it arises as he approaches and comes within the statutory stopping area. It is at that time that he must determine whether he is under a statutory duty to stop. As heretofore pointed out, the existence of the duty is not absolute but is conditioned on the existence at that time of a certain state of facts. It seems to us that in determining whether the fact situation is such as to call the statutory duty into existence, we should not hold the motorist to greater wisdom or better judgment than a reasonably prudent person, similarly situated, would exercise. Accordingly, we apply the objective common-law test of the reasonably prudent man and hold that before it can be said in a given case that an approaching train was 'plainly visible' as a matter of law, it must appear, as a matter of law, that a reasonably prudent person, situated as was the motorist and exercising ordinary care for his own safety, should have seen it. We further hold that it will not be said that a train was 'in hazardous proximity' to a crossing, as a matter of law, unless under all the attendant facts and circumstances it can be said, as a matter of law, that by reason of the speed and nearness of the train a reasonably prudent person should have known that an attempt to proceed over the crossing ahead of the train, was hazardous.

\* \* \* \* \* \*

"Considered by and large, we see no sound reason to be dissuaded from applying the common-law test of the reasonably prudent man in determining whether, under the statute, a train was 'plainly visible' and 'in hazardous proximity' to a crossing. \* \* \*" (291 S.W.2d at pages 935, 936, 939.) *Id.* at 285.

In our decision in Southern Railway Co. v. Jolley, *supra*, we pointed out that there had been very little judicial expression in Georgia construing this statute since its enactment in 1953. However, we again cited the *McFerrin* case with approval and quoted from it in part as follows:

\* \* \* [T]here is no absolute duty on the motorist to stop. The duty to stop within the statutory distance comes into existence only when, among other things, the train is plainly visible. The test of the reasonably prudent man is applied to determine whether the train was, or should have been, plainly visible. Thus, "before it can be said in a given case that an approaching train was 'plainly visible' as a matter of law, it must appear, as a matter of law, that a reasonably prudent person, situated as was the motorist and exercising ordinary care for his own safety, should have seen it." *Id.* at 937.

We conclude that even if the statute were applicable here, the question of whether or not the train was, or should have been, plainly visible to Gross, in the exercise of ordinary care, as he approached the crossing, would have to be submitted to and decided by a jury.[5]

The highway and railroad statutes discussed above do not bar a recovery by plaintiffs as a matter of law under the avoidance rule. The question must be submitted to a jury for its determination.

### Conclusion

The court is mindful of the diligent consideration given by the learned trial

---

5. Chief Justice Calvert of the Supreme Court of Texas, who wrote the opinion in the *McFerrin* case and also the opinion in New Orleans R. Co. v. Day, 316 S.W.2d 402, *supra*, has written a learned and scholarly article based on the *McFerrin* case on how to submit special issues under this statute. See Robert W. Calvert, Special Issues Under Art. 6701d, Section 86(d) of the Texas Civil Statutes, 34 Tex.L.R. 971 (Oct. 1956).

judge to the issues in this case as shown by his exhaustive memorandum opinion. Under such circumstances, we are reluctant to send the case back to the district court for a trial. However, we feel that in view of our opinion on the issues and the law involved, which we have discussed above, there is no other course open to us. There are a number of genuine issues as to material facts in the case that must be submitted to a jury.[6]

Accordingly, we reverse the decision of the district court and remand the case to the trial court for a trial before a jury in accordance with this opinion.

Reversed and remanded.

6. Compare Marsden v. Patane, 5 Cir. 1967, 380 F.2d 489, where a divided court approved the general rule that negligence is ordinarily a question for the jury, but on the facts in that case determined it as a matter of law in granting a summary judgment for the defendant.