SPECTOR, Chief Judge.
Appellant seeks reversal of an adverse judgment in a replevin action brought by appellee.
The sole issue presented is whether, under the statutory provisions obtaining at all times material to this cause, a foreign lien against an automobile which has not been recorded in the office of the Motor Vehicle Commission of this State is enforceable against a subsequent purchaser for value in Florida. In July of 1969, one Robert Schroeder purchased a used 1967 Pontiac convertible from an automobile dealer in Saratoga Springs, New York. Schroeder made a down payment and financed the remainder under a retail installment sales contract which was assigned by the dealer to General Motors Acceptance Corporation. On December S, 1969, appellant purchased the subject vehicle from Schroeder for valuable consideration and applied for a motor vehicle certificate of title from the State of Florida, which was issued on December 11, 1969. At the time Schroeder sold the vehicle to appellant, he produced his vehicle registration certificate issued to him by the State of New York on July 22, 1969, which registration certificate does not show any liens on said automobile nor does it have a place where such liens may be noted. At the time appellant purchased the automobile, Schroeder had defaulted in his obligations under the installment sales contract held by appellee. The registration certificate reflected Schroeder’s address to be in Saratoga Springs, New York, but appellant made no inquiry of the County Clerk of Saratoga County, New York, to determine whether there were any liens recorded in that office against the automobile. Apparently, under New York law obtaining at the time, no certificate of title or procedure for recording liens in that State’s Department of Motor Vehicles is provided. When Schroeder sold the vehicle to appellant, he executed a bill of sale and apparently represented that he owned the car free and clear of any liens or encumbrances. Upon proper application to the Florida Motor Vehicle Commission, a certificate of title for the vehicle in question was issued to appellant.
Appellee filed its replevin action in 1970 against appellant asserting that its right to possession of the vehicle was superior to appellant’s rights since appellee had filed the requisite financing statement protecting its security interest in the motor vehicle at the County Clerk’s Office for Saratoga County, New York, in accordance with the laws of the State of New York. Apparently, the filing of said financing statement, being in conformance with New York law, would have protected appellee against any subsequent purchaser in the State of New York since under the laws of that State that is the procedure provided by the legislature to establish and protect liens on motor vehicles and the holders thereof as against subsequent purchasers.
Appellant contends that the judgment in favor of appellee is contrary to the provisions of Section 319.27(3) (c), Florida Statutes, F.S.A., which provides in essence that liens or security interests under conditional sales contracts and the like on a motor vehicle are not enforceable in this State against creditors or subsequent purchasers for value unless filed and noted upon the certificate of title issued in this State for a vehicle which has previously been titled or registered outside the State. We agree and reverse.
The controlling statutory provision was enacted in 1965 and reads as follows:
“319.27(3) (c) When a certificate of title on a motor vehicle has been issued in this state on a motor vehicle previously titled or registered outside this state, liens valid *562 in and registered under the law of the state wherein such liens were created are not valid in this state unless filed and noted upon the certificate of title under the provisions of this section.”
Prior to the 1965 amendment to Chapter 319, Florida Statutes, F.S.A., which added the foregoing provision, Section 319.27(3) (f) provided as follows:
“Any person, firm or corporation purchasing a motor vehicle upon which no certificate of title has been issued in Florida shall he deemed to be an innocent purchaser for value, without notice, of any retain title contract, conditional bill of sale or chattel mortgage, provided such purchaser: 1. procures from the person selling such vehicle a sworn statement showing: a. that no lien does exist, b. name and address of owner on the date the current tag on such vehicle was acquired; c. county and state where current tag on such vehicle was acquired; 2. attaches to such sworn statement the certificate of title, if one has been issued. If a certificate of title has not been issued, procures from the seller an oath that no certificate of title has ever been issued, and 3. obtains a telegram or statement in writing from the motor vehicle commissioner, or like officer, in the state of the current tag, to the effect that no lien does exist on said motor vehicle. If facilities do not exist in that office for the recording of liens, then the purchaser shall obtain a telegram or statement in writing from the recording officer of the city or county and state of the residence of the seller as shown by the sworn statement, that no lien against said motor vehicle is of record in such county.”
Comparison of the two statutory provisions set out above makes it clear that prior to the 1965 amendment, a purchaser of a vehicle not previously titled in Florida was required to make inquiry of a foreign state’s motor vehicles commissioner, or like officer, where the car was currently tagged to determine if there exists a recorded lien there; or if no facilities exist in that office for recording liens, then similar inquiry must be made with the recording officer of the city or county and state where the seller resided. This provision resulted in numerous instances where innocent Florida purchasers of out-of-state vehicles were held to be unprotected from enforcement of foreign liens because such purchasers had failed to make the diligent inquiry in the state of prior registration required by the statute.
Although the provisions of Section 319.-27(3) (f) were on the statute books prior to the 1965 amendment and the terms thereof required diligent inquiry on the part of bona fide purchasers to ascertain the existence of foreign liens, most of the cases considering the question decided in favor of the foreign lienholder, when the appropriate inquiry had not been made, on the basis of the rules of comity. Judge Wig-ginton’s exhaustive opinion written for the Second District Court of Appeal in City of Cars, Inc. v. General Motors Acceptance Corporation, 175 So.2d 63 (Fla.App.1965), collects all of the important cases and appears to be the leading Florida case on the subject. One of the cases cited in City of Cars, supra, was Capital Lincoln-Mercury, Inc. v. General Motors Acceptance Corporation, 105 So.2d 899 (Fla.App.1958). In that case the court said at page 900 :
“The controversy arises over applicability of the rule of comity enunciated in earlier decisions of the Florida Supreme Court so as to give to liens validly created in other states priority over subsequent holders of such encumbered vehicles under the law of this jurisdiction. In the case at bar the court construed those decisions to be ‘bottomed on the strong policy of applying the rule of comity and giving full effect to the contract rights acquired and perfected under the law of the state where the contract was made and the property situate at the time, and that the courts of Florida would enforce *563 such rights unless our statutes clearly direct otherwise.’ ” (Emphasis supplied)
Appellee rests his case entirely on the contention that the repeal of Section 319.27 (3) (f), Florida Statutes, and the adoption of Section 319.27(3) (c), both effective January 1, 1966, did not change the law of Florida. While appellee’s argument in this regard is persuasive, it is difficult for us to ignore the fact that the 1965 Legislature repealed the statute requiring a Florida purchaser to make diligent inquiry about out-of-state liens and instead enacted a statute providing that foreign liens are not enforceable in Florida unless recorded with the Motor Vehicle Commission of this State. Obviously, the 1965 Legislature signaled a change in the public policy of the State which theretofore considered valid foreign liens enforceable in Florida under the rule of comity. Indeed, the cases invoking the rule of comity for that purpose stated that such foreign liens would be enforced “unless our statutes clearly direct otherwise”. [See underlined portion of the above excerpt from the Capital Lincoln-Mercury case, supra, which was cited with approval in Judge Wigginton’s decision in the City of Cars case, supra.]
Until the 1965 amendment, Florida courts properly recognized foreign liens under the rule of comity. However, since that time the public policy of Florida with respect to foreign liens was changed by statute, thus requiring a departure from the holding in City of Cars and like cases. The discussion of limitations on the application of the rule of comity found in 16 Am.Jur.2d, Conflict of Laws, Section 6, contains the following statement:
“Generally speaking, the public policy of a state is to be found in its constitution, its statutes, and the decision of, or settled rules laid down, by, its courts, but if the policy of the forum has been expressed positively in a statute, that policy must prevail.”
It is clear to us that the 1965 repeal and adoption respectively of the statutes discussed above had the effect of shifting the public policy of this State theretofore existing whereunder foreign automobile liens' had been enforceable against Florida purchasers or mortgagees who had failed to make the requisite inquiry concerning the liens in the foreign state.
Appellee’s reliance upon Brinkley v. Freedom National Bank of New York, 210 So.2d 465 (Fla.App.1968), and Gelfo v. General Motors Acceptance Corporation, 206 So.2d 247 (Fla.App.1968), is of no avail since the facts giving rise to those cases occurred prior to the effective date of the repeal of Section 319.27(3)(f), Florida Statutes, F.S.A.
Accordingly, the judgment reviewed herein is reversed.
WIGGINTON and CARROLL, DONALD, K., JJ., concur.