**MACK FINANCIAL (CANADA), LTD., Plaintiff,**

**v.**

**JOELSON CONCRETE PIPE COMPANY, INC., Defendant.**

**No. 87–284–CIV–T–17(C).**

United States District Court, M.D. Florida, Tampa Division.

Feb. 6, 1989.

Roy W. Cohn, Gibbons, Smith, Cohn & Arnett, P.A., Tampa, Fla., for plaintiff.

Donald H. Whittemore, Shackleford, Farrior, Stallings, Tampa, Fla., for defendant.

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

KOVACHEVICH, District Judge.

The cause is before the Court on Defendant's motion for summary judgment, response thereto, and court-ordered joint memorandum.

This circuit clearly holds that summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the nonmoving party. *Sweat v. The Miller Brewing Co.*, 708 F.2d 655 (11th Cir.1983).

All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hayden v. First National Bank of Mt. Pleasant,* 595 F.2d 994, 996-7 (5th Cir.1979), quoting *Gross v. Southern Railroad Co.,* 414 F.2d 292 (5th Cir.1969). Factual disputes preclude summary judgment.

The Supreme Court of the United States held, in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986),

> In our view the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 273.

The Court also said, "Rule 56(e) therefore requires that nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing there is a genuine issue for trial.'" *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. at 2553, 91 L.Ed.2d at 274.

Complaint in this cause was filed February 25, 1987. The complaint alleges: That Plaintiff sold two trucks and sleeper bunks to R.S.T. Enterprises on November 29 and December 5, 1985. That R.S.T. defaulted on the sales contracts by failing to make payments due Plaintiff. That Defendant Joelson is presently in possession of the trucks and bunks and that Plaintiff is without knowledge as to how Defendant came into possession. Plaintiff alleges that Defendant acquired possession subject to Plaintiff's rights as owner or holder of a security interest. The complaint seeks possession of the trucks and bunks and damages for wrongful detention of the property.

## FINDINGS OF FACT

1. Plaintiff financed the sale of two Mack trucks and sleeper bunks sold pursuant to Conditional Sale Agreements dated November 29, 1985, and December 5, 1985. Plaintiff became the assignee of the seller's rights. The parties agree that Plaintiff had a perfected security interest in the property under Canadian law.

2. Plaintiff has provided copies from the Personal Property Security Registration System of the Province of Ontario for the vehicles in question. (Ex. 3 and 4 to memorandum in opposition to motion for summary judgment). Plaintiff asserts that, in accordance with Chapter 375, Revised Statues of Ontario, 1980, it perfected its rights as conditional seller.

3. In 1986, Defendant was interested in acquiring one or more Mack trucks. Defendant, through its President Roger Beacon and a mechanic, met with a truck broker in Knoxville, Tennessee. The broker took Beacom and the mechanic to Parklane Truck Sales, which is apparently located in Chicamaunga, Georgia.

4. At Parklane Beacom was introduced to Waylon Murdock, represented to be a truck broker. Beacom and the mechanic examined a Mack truck they were interested in and inquired if any similar trucks were available. Mr. Murdock said one would be available the next day.

5. At Parklane, Beacom also met Barry Cunningham, who represented himself as President of R.S.T. Enterprises, owner of the trucks. Both of the trucks had the name "Mid Industries" with a Kitchner, Ontario, Canada address painted on the side. Beacom became aware that the trucks were built in Canada. Mr. Beacom asked both Mr. Cunningham and Mr. Murdock were free and clear of liens. He was advised by both men that they were. Mr. Cunningham showed Beacom what he purported were title certificates from Ontario, Canada. (According to the Ontario Minister of Transportation, the Providence of Ontario, Canada issues registration certificates, rather than title certificates). Beacom found no notations on the certificates of notations of liens nor does there appear to be a place for the notation of liens on the form.

6. Mr. Beacom contacted the Tennessee Division of Motor Vehicles, explained the transaction, and was advised there was no

problem with the transaction, as far as the State of Tennessee.

7. Mr. Beacom then wrote two checks, each for $47,500.00 and Mr. Cunningham surrendered the purported certificates and bills of sale were prepared. The bill of sales are dated March 21, 1986, and no liens or encumbrances are indicated thereon. (Exs. A and B to Deposition of Roger Beacom). The trucks were then driven to Florida.

8. Mr. Beacom testified that he received titles to the two trucks from Mr. Cunningham. He brought them back and gave them to the corporate secretary and comptroller, Mr. Connelly. The titles were, Mr. Beacom believes, Canadian. Mr. Beacom does not recall any notation of liens on those titles. The titles were taken to the courthouse to obtain licenses.

9. Pursuant to Ch. 319, Florida Statutes, Defendant Joelson applied to the Florida Department of Motor Vehicles for Florida title certificates, submitting the purported Canadian title certificates, bills of sales and required affidavits in support thereof. - On May 15, 1986, title certificates to Defendant, neither certificate notes any liens, including Plaintiff's, on the trucks.

10. In the court-ordered joint memorandum, the parties agree: 1) that Plaintiff had a perfected security interest in the subject vehicles under Canadian law; 2) that Defendant purchased for value the subject vehicles and without actual knowledge of the existence of the Canadian liens; and 3) that the Florida Department of Motor Vehicles issued certificates of title in favor of Defendant and that no liens are noted upon the certificates of title.

CONCLUSIONS OF LAW

1. Defendant asserts that this cause of action is controlled by Section 319.27(4)(c), Florida Statutes, which states:

When a Florida certificate of title has been issued on a motor vehicle or mobile home previously titled or registered outside this state, liens valid in and registered under the law of the state wherein such liens were created are not valid in this state unless filed and noted upon the certificate of title under the provision of this section.

2. Plaintiff contends that Chapter 319 does not apply to defeat the rights under a conditional sales contract, but only operates to defeat liens.

3. Plaintiff further asserts that there is a factual issue as to whether it retained title to the vehicles or retained a security interest. Defendant contends this is immaterial as the rights under a retained title contract are no different from those of a security interest.

4. Plaintiff also contends that there is a factual question whether Defendant was put on notice that it should investigate the existence of liens. Defendant counters that there is no duty under Florida law to investigate.

5. The Court has reviewed the pleadings in this cause, as well as the applicable law. The Court is satisfied that Section 319.27(4)(c), Fla.Stat., is applicable to both liens and conditional sales contracts. See, *Barry & Associates, Inc. v. General Motors Acceptance Corp.*, 262 So.2d 891 (Fla. 2d D.C.A.1972); *Northside Motors, Inc. v. General Motors Acceptance Corp.*, 255 So.2d 560 (Fla. 1st D.C.A.1971); *Black's Law Dictionary*, Fourth Edition (1951); 4 *Fla.Jur 2d*, Automobiles and Other Vehicles, sections 14, *et seq.*

6. Section 319.27(4)(c), Fla.Stat. provides that foreign liens, including the conditional sales contract herein, are not enforceable in Florida unless recorded with the motor vehicle department. *Northside Motors, Id.* at 563. The lien was not recorded with the Florida Department of Motor Vehicles and, therefore, is not enforceable unless there is another reason to find it enforceable.

7. Plaintiff asserts that Defendant had a duty to inquire whether or not there was a lien because the circumstances of the sale were suspect and sufficient to require Defendant to investigate further. The Court does not agree. The Court does not find that Plaintiff has established that a duty to investigate existed. However, conceding for this motion only, that Defendant had a duty to investigate the existence of a lien if he had information sufficient to put him on inquiry of the possible existence of

a lien, the Court does not find the facts present a material question of whether or not there was sufficient notice.

8. The facts recited by Plaintiff are not sufficient to say that a reasonable man cognizant of those facts would have reason to suspect or question whether or not there was indeed a lien on the trucks despite the assurances of everyone involved in the sale that there was no lien and thus put him on notice that inquiry was required. The Court has reviewed the "facts" stated in Defendant's memordanum, even if taken as true, do not raise a material issue of fact as to whether or not Defendant had sufficient notice of the possible existence of a lien and therefore was required to investigate. Accordingly, it is

ORDERED that the motion for summary judgment be granted and this cause be dismissed. The Clerk of the Court is directed to enter a judgment in favor of Defendant in this cause, granting the motion for summary judgment and dismissing the cause of action with prejudice.

DONE and ORDERED.